[No. 2316. Decided November 17, 1896.]

# THE STATE OF WASHINGTON, *Respondent*, v. WILLIAM CAREY, *Appellant.*

JURORS — BIAS — HOMICIDE — INFORMATION — INSTRUCTIONS — SUFFI-
CIENCY OF EVIDENCE.

Error in overruling a challenge for actual bias interposed to a juror is without prejudice, when the juror is subsequently excluded upon the peremptory challenge of the adverse party.

Where the examination of a juror shows that no fixed or definite opinion exists in his mind relative to the merits of a criminal prosecution, but only a vague or merely floating impression based upon a newspaper report of the case, or heard at about the time of the commission of the supposed crime, the juror is not subject to a challenge on the ground of bias.

Where the information in a prosecution for murder charges that the homicide was committed by means of striking and beating the deceased with "a heavy blunt instrument; a more particular description of which is to the prosecuting attorney unknown," the introduction in evidence of a broken oar, which had been found in the possession of the defendant, is not objectionable on the ground of variance, when it is not established on the trial what instrument it was that caused the death, other than that it was a heavy blunt one, and it is not shown that a description of the instrument was known by the prosecuting attorney at the time of filing the information.

The refusal of the court to instruct the jury as requested, upon defendant's theory of the case that death had been occasioned by a severe fall and not by the means charged in the information, is not erroneous, when the subject matter is covered by the general charge that, if it is possible to account for the death of the deceased upon any reasonable hypothesis other than that of the guilt of the defendant, it is their duty to do so and find the defendant not guilty, and by the further charge that, if the jury entertain any reasonable doubt upon any single fact or element necessary to constitute the offense, it is their duty to acquit him.

An instruction by the court in a murder case, charging the jury that "in the case of the defendant you have the right to consider the great interest he has in the result of your verdict," is not objectionable on the ground of being a judicial comment upon the evidence.

Where the court has correctly instructed the jury as to how intoxication should be regarded by them in determining the degree of defendant's guilt, in the event that they should find that he was intoxicated at the time of the commission of the offence, as claimed by the defense, a verdict of murder in the first degree is not erroneous, when there is evidence tending to support it.

A verdict of murder in the first degree is warranted, when there is evidence showing that defendant, who was living with an Indian woman, prompted by jealous motives had rudely assaulted her on the day of her murder, by striking her in the face and body with his clenched fist; that he had declared to another person that he would do her up that night; that about midnight a boat was seen out in Elliott bay going in the direction of Duwamish river in which were two persons, one beating the other with some instrument, the sound of blows and groans being audible; that the defendant and deceased had been spending the day in Seattle and had started for their home at the mouth of the Duwamish river at about eight o'clock in the evening, and that defendant had stopped about eleven that night at a saloon on the water front between the place he had been visiting in Seattle and his home; that after arriving home he called at a neighbor's and asked if he had seen anything of the deceased, claiming that she was to have come home by means of a street car; that about a day and a half later he asked this neighbor to help bury his wife, as she was dead; that such neighbor declined to assist and informed the officers, who arrested defendant; that defendant remarked several times that he wished he had killed the neighbor instead of the woman; that the woman was found sunk in the water near defendant's float house with a rope attaching the body to the float; and that an autopsy showed that death had resulted from concussion of the brain produced by blows upon the head from some blunt instrument.

Appeal from Superior Court, King County. — Hon. THOMAS J. HUMES, Judge.   Affirmed.

*Melvin G. Winstock*, and *John B. Wright*, for appellant.

*A. W. Hastie*, Prosecuting Attorney, and *W. W. Wilshire*, for The State.

The opinion of the court was delivered by

GORDON, J.—The appellant was convicted in the su-

perior court for King county of the crime of murder in the first degree and sentenced to death. From the judgment of conviction and an order denying his motion for a new trial, he has appealed.

1. The first assignment is that the court erred in overruling his challenge for actual bias interposed to jurors VanWort, Roberts and Osborn. As to juror Roberts, it is sufficient to say that the action of the court in overruling the challenge was without prejudice, even if erroneous, inasmuch as it appears from the record that he was subsequently excluded upon the peremptory challenge of the prosecution. From a consideration of the *voir dire* examinaton of jurors Van Wort and Osborn, we are satisfied that they were competent and impartial jurors. Counsel for the defendant cite the cases of *State v. Murphy*, 9 Wash. 204 (37 Pac. 420); *State v. Wilcox*, 11 Wash. 215 (39 Pac. 368); and *State v. Rutten*, 13 Wash. 203 (43 Pac. 30), decided by this court; but, in our opinion, the record in this case does not justify their claim that the question here presented is within the rule announced in any of these cases. The record in this case clearly and satisfactorily shows that no fixed or definite opinion existed in the minds of either of said jurors relative to the merits of the case, but only a vague, indefinite or merely floating impression based upon a newspaper report of the case, or heard at about the time of the commission of the supposed crime. The ruling of the lower court may well be sustained without in any wise infringing upon anything that is laid down in any of the cases above referred to.

2. It is next objected that there was a variance between the allegations of the information and the proof, in this: The information charges that the appellant "purposely and of his deliberate and premedi-

" tated malice killed one Lucy Williams, by then and
"there purposely, and of his deliberate and premedi-
" tated malice striking and beating the said Lucy
" Williams, thereby inflicting in and upon the said
'' Lucy Williams several mortal contusions, fractures
" and wounds, with a heavy blunt instrument, which
" he, the said William Carey, then and there had and
"held in his hands. *A more particular description of
"which said heavy blunt instrument is to the said prose-
" cuting attorney unknown;*" and it is contended that the
record shows that the "heavy blunt instrument" was a
certain broken oar found in the possession of the appel-
lant, and which oar was offered by the prosecution and
received in evidence; and that it further appears that
this oar was in possession of the prosecution and that
the prosecuting attorney had full knowledge of its ex-
istence at the time of filing the information in question.
Counsel has cited numerous cases in which it has been
held that where an indictment charges a defendant
with committing an offense against the person or prop-
erty of a person unknown, and it appears at the trial
that the name of the person was in fact known to the
grand jury, the defendant must be acquitted. *Common-
wealth v. Blood*, 4 Gray, 31; *State v. Stowe*, 132 Mo
199 (33 S. W. 799); *Presley v. State*, 24 Tex. App. 494 (6
S. W. 540); *Commonwealth v. Thornton*, 14 Gray, 41.

The reason is found in the rule requiring fullness
and precision in charging an offense, and that the
identity of the offense charged with that upon which
the conviction is sought should be established upon
the trial. An allegation in an indictment or informa-
tion that the name of a person or a fact *necessary to be
alleged* is unknown, is permissible only from necessity.
But however sound may be the rule for which counsel
contends, we do not think that it is applicable to the

present case.    It is true that it is charged in the information that the homicide was committed by means of striking and beating the deceased with " a heavy blunt instrument; *a more particular description of which is to the prosecuting attorney unknown;* " but it was not established by the evidence on the trial what that instrument really was, or that its description was known by the prosecuting attorney at the time of filing the information or up to the time of the trial.    There was evidence from which the jury might well have found that the blows or wounds causing death were inflicted with an oar, and there were in all three oars introduced in evidence,— one by the state and two by the defendant.    But we think that it cannot with certainty be told from the record that the wounds were inflicted with either or all of them.    While, upon the other hand, from the condition and appearance of the deceased and the expert and other testimony, there was abundant evidence to warrant the finding that death was occasioned by means of wounds inflicted "·with a heavy blunt instrument," of an unknown description.

3. It is urged that the court committed error in refusing to instruct the jury as requested by the defendant upon the subject of the *corpus delicti*.    Counsel argues that· there was evidence tending to show that death was occasioned by a severe fall which the deceased had sustained on the night in question, and not by the means charged in the information, and. that it was the defendant's right to have the jury instructed upon any theory of the case having evidence in its support.    Conceding the fact and the law to be as contended for by counsel, we think that no error was committed in refusing the particular instruction requested, because the subject matter was included in

and covered by the general charge in which the jury were told that if it was "possible to account for the death of the deceased upon any reasonable hypothesis other than that of the guilt of the defendant," then it became their duty to so account for and find the defendant not guilty. Also, that "if the jury entertained any reasonable doubt upon any single fact or element necessary to constitute the offense," it was their duty to acquit him.

4. It is complained that the court commented upon the evidence in instructing the jury with reference to the credit to which the respective witnesses were en-entitled. The particular language complained of is in these words : "And in the case of the defendant you have the right to consider the great interest he has in the result of your verdict." An instruction in the language here complained of was expressly upheld by this court in *State v. Nordstrom*, 7 Wash. 506 (35 Pac. 382), and for the reasons there given the contention of counsel cannot be sustained.

5. It is further complained that the jury erred in finding the defendant guilty of murder in the first degree. This claim proceeds upon the theory that the defendant was intoxicated at the time when the offense was committed, if committed at all by the defendant. At the request of the defendant the court correctly instructed the jury as to how intoxication should be regarded by them in determining the degree of defendant's guilt, (in the event that they should find that he was intoxicated). It was for the jury under such instruction to determine the fact, and their finding is not without sufficient evidence to support it.

6. It is also urged that the verdict is contrary to the evidence. We think this claim cannot possibly be maintained without disregarding a very great deal of

uncontradicted and competent evidence adduced at the
trial.    The record shows that the appellant had, for
several years prior to the time of the homicide, which
occurred (as is charged) on Christmas of 1895, fol-
lowed the occupation of a fisherman; that for some
months prior to that date the defendant had been liv-
ing with the deceased — an Indian woman — occupy-
ing a shack or floathouse, built upon a scow, moored
at a point on the shore of the Duwamish river distant
about two miles from where it empties into Puget
Sound.    On the afternoon or evening of the 24th day
of December, 1895, the defendant and deceased left
their place of abode and went in a row-boat to the
home of William Dobson and wife (the latter being
a sister of the deceased) who lived in a shack upon
the shore of Elliott bay in front of the city of Seattle,
distant some five or six miles from the home of the
defendant and deceased, already referred to.    They re-
mained at Dobson's until about eight o'clock Christ-
mas night, during which time considerable beer and
some whiskey was drunk, all hands participating.
While at that place, as shown by the evidence, the de-
fendant, prompted by jealous motives, rudely assaulted
the deceased, striking her in the face and body with
his clenched fist.    About eight o'clock Christmas night
the defendant and deceased got into their boat, osten-
sibly to go home.    Prior to leaving, the defendant
stated to John D. Frazer (one of the state's witnesses)
who had been one of the company at the home of
Dobson on that day, that he would "do her up that
night," referring to the deceased.    Before embarking
the defendant rudely and forcibly lifted the deceased
from the ground, carried her to the side of the boat,
and roughly and violently threw her into its bottom.
Some time after eleven o'clock of the same night the

defendant visited a saloon known as " The Exchange,"
situated near the water front between Dobson's house
and the mouth of the Duwamish river, and about one
mile from Dobson's house.   He remained in the saloon
only a short time, during which time he procured a
dollar's worth of whiskey; and thereafter, returning to
his boat, was seen to proceed in company with the de-
ceased in the direction of their home.   Mr. John
O'Leary and J. W. Kerry testified that about midnight
of the same night they saw out on the bay, at a con-
siderable distance from the shore but within hearing,
a row-boat occupied by two people going in the direc-
tion of Duwamish river.   One of the occupants of the
boat was striking the other occupant, who was seated
at or near the stern, with something which he held in
his hands; that they distinctly heard the sound of the
blows and the screams and groans of the person who
received them; that said boat proceeded on its course
in the direction of the mouth of the Duwamish river.
About two o'clock in the morning of December 26th,
one Joseph Tulip, who resided with his wife and child
in a cabin distant about fifty feet from the floathouse
of defendant, was aroused by the defendant, who came
to Tulip's house, stated that he had just returned from
Seattle, and asked Tulip if he had seen anything of
his wife (meaning the deceased), saying that she ought
to have been there before him; that she had left him
at Seattle at about eleven o'clock, and was to come
home by way of South Seattle on a street car.   He ob-
tained permission to spend the remainder of the night
at Tulip's.   He also stayed there the next night.
About noon of the 27th he informed Tulip that the
woman was dead, and requested help to bury her.
Tulip, suspecting foul play, declined to assist, and that
night, while defendant was asleep, Tulip informed the

officers, who proceeded to the house and arrested the defendant.  Upon being arrested the defendant cursed Tulip and displayed much anger towards him.  On the way to the jail the defendant remarked in substance two or three times, that he regretted that he had not killed Tulip instead of "the woman;" also that he wished he was going to be hung "for killing that s— of a b—, (referring to Tulip) instead of for killing the woman," and similar expressions.  On the morning after arriving at the jail, the defendant disclosed, for the first time, the whereabouts of the body which was found in about eight feet of water, a rope attaching it to the end of defendant's float.  The body was held under water by being fastened to a sack containing lead.

The autopsy disclosed the fact that life was extinct before the body was placed in the water, and that death resulted from concussion of the brain produced by blows upon the head from some blunt instrument. There were bruises and contusions upon the head, arms and hands.

Such, in brief, was the case made by the evidence introduced on the part of the state, and although the defendant became a witness in his own behalf and expressly asserted his innocence, the jury found him guilty of murder in the first degree.  There was, we think, "a maturity of proof" to sustain the verdict, and we have been unable to discover any reason why it should be set aside and a new trial awarded.

The judgment of conviction is affirmed and the cause remanded to the lower court with directions to proceed to appoint a day for the carrying of its sentence into effect according to law.

HOYT, C. J., and ANDERS, DUNBAR and SCOTT, JJ., concur.