[No. 19321-3-II.   Division Two.   April 17, 1998.]

THE STATE OF WASHINGTON, *Respondent*, v. GEORGE A. PICARD, JR., *Appellant*.

*W. David Rovang*, for appellant (appointed counsel for appeal).

*Russell D. Hauge, Prosecuting Attorney*, and *Pamela B. Loginsky, Deputy*, for respondent.

BRIDGEWATER, A.C.J. — George A. Picard, Jr., appeals his conviction for first degree arson of the residence where he and his mother lived. We hold that Picard lacks standing to raise a Fourth Amendment claim with regard to seizure of the portable heater used to intentionally burn the residence because he did not have an ownership or possessory

interest in the heater, nor did he have a reasonable expectation of privacy in the area of the house where the heater was located. We hold that evidence of planning, overinsurance and opportunity, coupled with expert testimony that a portable heater was used to intentionally burn the residence, established the corpus delicti of arson sufficient to admit Picard's confession. We further hold that the trial court was not required to specifically instruct the jury that the fire was presumed accidental because such a presumption is adequately covered in the instructions given. We affirm.

As they purportedly returned from a trip to Oregon, a fire destroyed the residence where Picard and his mother lived. Fire officials determined during their initial investigation that a portable electric heater left in a closet in the mother's bedroom ignited nearby combustibles, causing the destructive fire. Fire officials concluded that the fire occurred accidentally; they took the portable heater without a warrant or consent and placed it in storage. An insurance company subsequently paid Picard's mother her insurance claim.

Picard eventually told his father that he "set the house on fire" and told his brother that he "took a Benda torch . . . through the house and lit different spots of the house on fire." Eventually, Picard's admissions reached investigators, who reopened the case. Investigators uncovered incriminating evidence that they could not have discovered at the scene of the fire. Picard and his mother moved many of their personal valuables out of the house eight days before the fire. Approximately one and a half hours before the fire was reported to authorities, Picard's mother's credit card was used to purchase gasoline at a gas station located 46 minutes from the residence. The insurance company paid Picard's mother $81,677 for the structure, yet 12 months before the fire Picard's mother listed the residence for sale at $46,000. The assessed value of the property only months before the fire was $26,019. A forensic investigator, examining the heater for the first time in a

laboratory, concluded that, before the fire, someone removed the heater's protective grill and placed combustible materials between the heating element and the grill. At trial, Picard denied the accusations against him and presented expert testimony that the evidence was consistent with an accidental fire. A jury convicted Picard of first degree arson.

## I Standing

Picard contends that the forensic evidence related to the heater should have been suppressed because the local fire department lacked lawful authority to seize the heater. We ordered supplemental briefing and the State argued, for the first time on appeal, that Picard did not have standing to challenge the fire department's seizure of the heater.

■■ Seizure of personal property by a fire department implicates the Fourth Amendment because the fire department is acting under governmental authority and because the seizure may invade the owner's legitimate possessory interest in the property. *Horton v. California*, 496 U.S. 128, 133-34, 110 S. Ct. 2301, 110 L. Ed. 2d 112 (1990); *Michigan v. Clifford*, 464 U.S. 287, 291-92, 104 S. Ct. 641, 78 L. Ed. 2d 477 (1984); *Michigan v. Tyler*, 436 U.S. 499, 504, 98 S. Ct. 1942, 56 L. Ed. 2d 486 (1978). The warrantless entry of fire officials into a burning building is a lawful exception to the Fourth Amendment's warrant requirement. *Clifford*, 464 U.S. at 293. "A burning building of course creates an exigency that justifies a warrantless entry by fire officials to fight the blaze." *Id.* Once in the building, fire departments do not need a warrant to remain for a reasonable time thereafter to investigate the origin, cause and circumstances of the fire, and the extent of the loss. RCW 48.48.030, .060; *Clifford*, 464 U.S. at 293; *Tyler*, 436 U.S. at 510; *State v. Bell*, 108 Wn.2d 193, 197, 737 P.2d 254 (1987).

■■ Citing *State v. Carter*, 127 Wn.2d 836, 904 P.2d 290 (1995), Picard acknowledges that a defendant must have

standing to challenge an unlawful search or seizure under the federal and state constitutions. Picard also acknowledges our opinion in *State v. Jackson*, 82 Wn. App. 594, 601-02, 918 P.2d 945 (1996), *review denied*, 131 Wn.2d 1006 (1997), wherein we held that the defendant has the burden of showing that he is entitled to constitutional protection, which includes the burden of showing that a privacy or possessory interest was invaded, that government agents participated in the invasion, and that he has standing to contest the invasion. Picard requested an evidentiary hearing under *Combs v. United States*, 408 U.S. 224, 92 S. Ct. 2284, 33 L. Ed. 2d 308 (1972), and *Carter*, 127 Wn.2d 836, which we ordered under RAP 9.11. The trial court held a hearing and entered findings and conclusions on November 26, 1997.

■ Because Picard does not assign error to the trial court's findings, they are verities on appeal. RAP 10.3(g); *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994). The trial court found that Picard resided in an upstairs bedroom of the residence while his mother resided in a bedroom on the main floor. There were at least five portable heaters in the house, some of which Picard may have purchased and others his mother may have purchased. One heater was permanently located on the main floor near the closet in his mother's bedroom. Although Picard had unrestricted access to most parts of the residence, he did not reside in that room and would normally knock on the bedroom door before entering if the door was closed. Picard did not use his mother's bedroom for living purposes in her absence.

■ ■ Picard does challenge the trial court's conclusions of law, which state that the trial court was "unable to conclude" that Picard had an ownership or possessory interest in the portable heater located near the closet in his mother's bedroom, or that Picard had a legitimate and reasonable expectation of privacy in the contents of his mother's bedroom or in the contents of her bedroom closet. Appellate review of conclusions of law is limited to determining whether the findings of fact support the

conclusions of law. *State v. Macon*, 128 Wn.2d 784, 799, 911 P.2d 1004 (1996). Picard had the burden of showing that a privacy or possessory interest was invaded. *Jackson*, 82 Wn. App. at 601-02. The trial court's findings that Picard "normally knocked on the door to his mother's bedroom, if the door was closed, prior to entering the bedroom" and that Picard "did not use [his mother's] bedroom . . . for living purposes in his mother's absence" support the trial court's conclusions. Picard lacks standing to challenge the seizure of the heater.

## II Foundation

Picard contends that there was a lack of foundation to admit the portable heater into evidence. He argues that his conviction should be overturned because the storage facility holding the heater was accessible to many people and because an unbroken chain of custody was not established. The State responds that admission of the heater was proper because it was satisfactorily identified and because a sufficient chain of custody was established.

A sufficient foundation for the admission of evidence may be established even without proof of an unbroken chain of custody. "Before a physical object connected with the commission of a crime may properly be admitted into evidence, it must be satisfactorily identified and shown to be in substantially the same condition as when the crime was committed." *State v. Campbell*, 103 Wn.2d 1, 21, 691 P.2d 929 (1984). "A failure to present evidence of an unbroken chain of custody does not render an exhibit inadmissible if it is properly identified as being the same object and in the same condition as it was when it was initially acquired by the party." *State v. DeCuir*, 19 Wn. App. 130, 135, 574 P.2d 397 (1978). The record shows that the lead investigator identified the heater at trial and testified that it was substantially in the same condition as it was when

he picked it up at the scene of the fire. Picard's contention is without merit.

## III Continuance

Picard contends that the trial court erred when it denied his third motion for a continuance, which was predicated on his need to secure forensic expert testimony.

> The granting or denying of a motion for continuance of the trial of a case, whether criminal or civil, rests within the sound discretion of the trial court, and this court will not disturb the trial court's ruling absent a showing that the trial court in ruling upon the motion either failed to exercise its discretion or manifestly abused its discretion.

*State v. Miles*, 77 Wn.2d 593, 597-98, 464 P.2d 723 (1970). A trial court's ruling on a motion for a continuance will be disturbed on appeal only upon a showing that the accused has been prejudiced or that the result of the trial would likely have been different had the continuance been granted. *State v. Eller*, 84 Wn.2d 90, 95, 524 P.2d 242 (1974). Picard argues that the trial court abused its discretion when it denied his third motion for a continuance because he was deprived of an adequate opportunity to investigate the age of the ink used to write the word "Picard" on the bag used to store the heater. Picard's attorney theorized that fire officials had written Picard's name on the bag three years after the heater was seized and explained that "[t]he FBI has the means and the ability to extract ink from documents and date it from chemical markers."

A denial of a motion for a continuance to seek the assistance of a forensic expert may be upheld where the moving party claims no surprise at the existence of the physical evidence, where there is no evidence the moving party actually sought expert testimony, and where the moving party failed to demonstrate that further investigation would have produced favorable evidence. *See State v. Williford*, 64 Wn.2d 787, 792, 394 P.2d 371 (1964). Here, although Picard claims he contacted the FBI about the possibility of

conducting tests on the ink, there is no evidence that he was surprised by the existence of the bag or of the word "Picard." In addition, his theory of recent fabrication rested on a foundation of conjecture, and the record lacks any evidence to support his argument that a continuance and the assistance of a forensic expert would have provided the evidence that he speculated might be available. Moreover, the trial court granted Picard's first two motions for continuances. Under these facts, it cannot be said that the denial of his third motion for a continuance was a manifest abuse of discretion.

## IV Hearsay

Picard claims that the trial court erred in refusing to allow him to present evidence of motive. The determination of whether testimony is admissible rests within the sound discretion of the trial court. *Brewer v. Copeland*, 86 Wn.2d 58, 542 P.2d 445 (1975). The State produced evidence that Picard and his mother had removed valuables and items of personal sentimental value from the residence shortly before the fire. The obvious inference was that the fire was planned and that the valuables were removed to preserve them. Picard sought to introduce evidence at trial that his mother's motive in removing the valuables from the residence was to protect them from her estranged husband, Picard's father, rather than to preserve them from arson. The court sustained the State's hearsay objection when Picard attempted to elicit testimony from his father and from Linda Lujan, a family friend, that his mother was afraid that his father might "torch" the house. Picard's argument that a trial court must allow a defendant to offer either speculative evidence or relevant hearsay evidence is not supported by the law. ER 802 ("Hearsay is not admissible except as provided by these rules, by other court rules, or by statute."). The purpose of the hearsay rule is to exclude untrustworthy evidence which may prejudice a litigant's cause or defense. *Nordstrom v. White Metal Rolling & Stamping Corp.*, 75 Wn.2d 629, 632, 453 P.2d

619 (1969). Excluding the hearsay was not error. Moreover, Picard fails to show that he was prejudiced. He testified that he and his mother removed the property based on their fear of Picard's father.

In an attempt to rebut the State's evidence that valuables were removed from the residence before the fire, Picard sought to introduce hearsay evidence, in the form of a videotape, to show that valuables were found at the scene of the fire. The trial court allowed the jury to view the videotape of the burned remains of the house but denied Picard's motion to allow the jury to hear an unidentified declarant say on the recorded tape "[t]hey must have had some jewelry here. There's some . . . uh . . . looks like a silver necklace. I'm gonna try and dig out." The declarant was off camera and unidentified. It is not an abuse of discretion to exclude hearsay where the declarant is unknown and unidentified. *Cf. Makoviney v. Svinth*, 21 Wn. App. 16, 21, 584 P.2d 948 (1978), *review denied*, 91 Wn.2d 1010 (1979). Moreover, as the record clearly indicates, the unknown declarant's statement was that something "looked like" jewelry. The probative value of these statements was slight, and its reliability questionable. There was no abuse of discretion.

### V Corpus Delicti

Picard contests whether there was sufficient evidence of corpus delicti to introduce his confessions. "Corpus delicti" literally means "body of the crime." *State v. Aten*, 130 Wn.2d 640, 655, 927 P.2d 210 (1996). "In this state, confessions or admissions of a person charged with a crime are not sufficient, standing alone, to prove the corpus delicti and must be corroborated by other evidence." *Id.* at 655-56. The "corpus delicti rule" states

> The confession of a person charged with the commission of a crime is not sufficient to establish the *corpus delicti*, but if there is independent proof thereof, such confession may then be considered in connection therewith and the *corpus delicti* established by a combination of the independent proof and the confession.

> The independent evidence need not be of such a character as would establish the *corpus delicti* beyond a reasonable doubt, or even by a preponderance of the proof. It is sufficient if it *prima facie* establishes the *corpus delicti*.

*Aten*, 130 Wn.2d at 656 (citing *State v. Meyer*, 37 Wn.2d 759, 763-64, 226 P.2d 204 (1951)). " 'Prima facie' in this context means there is 'evidence of sufficient circumstances which would support a logical and reasonable inference' of the facts sought to be proved. The evidence need not be enough to support a conviction or send the case to the jury." *Aten*, 130 Wn.2d at 656 (citations omitted). But if no such evidence exists, the defendant's confession or admission cannot be used to establish the corpus delicti and to prove the defendant's guilt at trial. *Id.*

■■■■ "The corpus delicti of the crime of arson consists of two elements: (1) that the building in question burned; and (2) that it burned as a result of the willful and criminal act of some person." *State v. Nelson*, 17 Wn. App. 66, 69, 561 P.2d 1093 (citing *State v. Turner*, 58 Wn.2d 159, 361 P.2d 581 (1961); *State v. Pienick*, 46 Wash. 522, 90 P. 645 (1907); *State v. Zuercher*, 11 Wn. App. 91, 521 P.2d 1184 (1974)), *review denied*, 89 Wn.2d 1001 (1977). Corpus delicti can be proved by either direct or circumstantial evidence. *Aten*, 130 Wn.2d at 655. Opportunity and convincing proof of motive on the part of the accused to burn a residence are circumstances that may establish that the building burned as the result of the willful and criminal act of some person. *State v. Pfeuller*, 167 Wash. 485, 490, 9 P.2d 785 (1932). In *State v. Despain*, 152 Wash. 488, 278 P. 173 (1929), the defendant owned a dwelling that burned. The dwelling and its contents were insured for $1,900; their value, however, was approximately $1,000. *Id.* at 489-90. The court held that the incendiary origin of the fire, proof of motive in the form of overinsurance, the defendant's presence, and the absence of anyone else were sufficient to establish the guilt of the defendant. *Id.* at 491. Here, the burned house, the testimony of the State's forensic expert that the heater was rigged by a human to ignite combus-

tibles, the movement of valuables out of the house just before the fire, the fact of overinsurance, and Picard's proximity to the fire establish the corpus delicti of the crime of arson.

## VI Jury Instructions

We review a trial court's decision to reject a party's jury instruction for an abuse of discretion. *State v. Pesta*, 87 Wn. App. 515, 524, 942 P.2d 1013 (1997) (citing *Herring v. Department of Soc. & Health Servs.*, 81 Wn. App. 1, 22, 914 P.2d 67 (1996)). Jury instructions are sufficient if they permit each party to argue his or her theory of the case, are not misleading, and, when read as a whole, properly inform the jury of the applicable law. *Pesta*, 87 Wn. App. at 524 (citing *Brown v. Spokane County Fire Protection Dist. No. 1*, 100 Wn.2d 188, 194, 668 P.2d 571 (1983)). Picard contends it was reversible error for the trial court to fail to give the jury the following instruction on the presumptive causes of a fire:

> You are instructed that there is a presumption in law that the fire in this case was caused by accident or natural causes, rather than by a deliberate act of the Defendant. Proof of the single fact that a residence has been burned is not enough to prove the crime of Arson since it must also be proven that it was burned by the willful act of some person criminally responsible and not as a result of natural or accidental causes.

Picard cited *State v. Kindred*, 16 Wn. App. 138, 553 P.2d 121 (1976), *review denied*, 89 Wn.2d 1002 (1977), in support of his instruction. The *Kindred* court held that an instruction identical to the one proffered by Picard "should be given if the defendant contests the issue of the cause of the fire *and* there is substantial evidence that the fire was of accidental or natural causes." 16 Wn. App. at 140-41. The trial court in that case did not abuse its discretion when it refused to give the instruction because there was no evidence that the fire was accidentally or naturally caused, and because the other instructions given, which instructed the jury on the elements of the crime of arson,

on the presumption of innocence, and that the State had the burden of proving these elements beyond a reasonable doubt, allowed Kindred to argue his theory of the case. *Kindred*, 16 Wn. App. at 141. We similarly hold that the trial court did not abuse its discretion when it refused to give Picard's instruction. The remaining instructions given, which instructed the jury on (1) the elements of arson, (2) that Picard is presumed innocent, and (3) that the State had the burden of proving these elements beyond a reasonable doubt, allowed Picard to argue his theory of the case.

We note that the *Kindred* opinion relies on *State v. Smith*, 142 Wash. 57, 252 P. 530 (1927). In *Smith*, our Supreme Court held that when the instruction was timely requested and supported by substantial evidence, failure to give the instruction constituted reversible error. *Id.* at 58-59. The *Smith* opinion says nothing about whether the presence of other instructions could have cured the error, and we are left to guess what other instructions were given to the jury in the *Smith* trial. We conclude that *Smith* is dubious authority for the proposition that failure to give an instruction that a fire is presumed to be accidental is reversible error where merely the instruction is timely requested and supported by substantial evidence.

Moreover, we find persuasive the State's assertion that Washington courts no longer treat circumstantial evidence as inherently suspicious, as was true in 1927. *Compare State v. Gosby*, 85 Wn.2d 758, 764-66, 539 P.2d 680 (1975) (rejecting rule that circumstantial evidence must be inconsistent with innocence), *with Pienick*, 46 Wash. 522 (reversing conviction, noting that circumstantial evidence only was produced to show the fire was of incendiary character). Trial courts are now required to instruct each jury that guilt must be proven beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). We hold that the trial court's rejection of Picard's instruction regarding the presumption of accident was not an abuse of discretion because the instruction was adequately covered by the remaining instructions, which established

the elements of the crime of arson, that the State had the burden of proving these elements beyond a reasonable doubt, and that there is a presumption of innocence. *Kindred*, 16 Wn. App. 141.

Finally, Picard contends that the trial court abused its discretion when it failed to instruct the jury on the corpus delicti of arson. It is not error to refuse to give an instruction on the corpus delicti of a crime when the subject matter is adequately covered in other instructions, such as an instruction on reasonable doubt. *State v. Hopkins*, 71 Wn.2d 10, 15, 426 P.2d 496 (1967); *State v Vance*, 29 Wash. 435, 479, 70 P. 34 (1902); *State v. Carey*, 15 Wash. 549, 553, 46 P. 1050 (1896). Here, the court instructed the jury on reasonable doubt. Thus, Picard's contention fails.

We affirm.

ARMSTRONG and HUNT, JJ., concur.

Review denied at 136 Wn.2d 1021 (1998).