# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

    Respondent,

    v.

EUAL NEOSHIE DAVIS,

    Appellant.

)
)
)
)
)
)
)
)
)
)
)
)
)

No. 75234-1-I

DIVISION ONE

UNPUBLISHED

FILED: July 25, 2016

2016 JUL 25 AM 10: 18
COURT OF APPEALS DIV 1
STATE OF WASHINGTON
FILED

Cox, J. — Eual Davis appeals his judgment and sentence for theft and possession of a controlled substance. He argues that the court abused its discretion by admitting physical evidence without a sufficient chain of custody. He also argues he established that he unknowingly possessed the controlled substance. Finally, he argues that he was subject to custodial interrogation in violation of Miranda v. Arizona.[1]

Davis's arguments about the chain of custody go to the evidence's weight, not its admissibility. Substantial evidence supports the trial court's finding that Davis failed to establish the defense of unwitting possession of the controlled substance. Finally, Davis was not subject to custodial interrogation because the private security guard who questioned him was not a state agent. We affirm his judgment and sentence.

---

[1] 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Davis was in a Wal-Mart store when the store's loss prevention manager noticed him opening and hiding merchandise. The manager called the police, who arrested Davis in the store. When the arresting officer searched Davis, he found a glass pipe in his pocket. This pipe contained a controlled substance. While Davis was being searched, the loss prevention manager asked Davis questions.

The State charged Davis with theft and possession of a controlled substance. The parties agreed to a bench trial. At trial, the State introduced the glass pipe and Davis's statements to the loss prevention manager. Davis testified that he did not know the pipe contained a controlled substance.

The trial court found Davis guilty as charged.

Davis appeals.

## ADMISIBILITY OF EVIDENCE

Davis argues that the trial court abused its discretion by admitting the glass pipe into evidence without a proper chain of custody. We disagree.

"Before a physical object connected with the commission of a crime may properly be admitted into evidence, it must be satisfactorily identified and shown to be in substantially the same condition as when the crime was committed."[2] Factors that the trial court may consider "'include the nature of the article, the circumstances surrounding the preservation and custody of it, and the likelihood of intermeddlers tampering with it.'"[3] Minor discrepancies affect only the

---

[2] State v. Campbell, 103 Wn.2d 1, 21, 691 P.2d 929 (1984).

[3] Id. (quoting Gallego v. United States, 276 F.2d 914, 917 (9th Cir. 1960)).

2

evidence's weight, not its admissibility.[4] Thus, failure to establish an unbroken chain of custody does not make the item inadmissible if the State "'properly identifie[s] [it] as being the same object and in the same condition as it was when it was initially acquired.'"[5]

We review for abuse of discretion a trial court's evidentiary rulings.[6] "'A trial court abuses its discretion if its decision is manifestly unreasonable or based upon untenable grounds or reasons.'"[7]

Here, the trial court did not abuse its discretion. At trial, the arresting officer testified that he found a "[d]ark blue glass pipe" in Davis's pocket. Although the officer found the pipe intact, and the State introduced a partially broken pipe, the officer identified the pipe as the one he found in Davis's pocket.

The officer further testified that he handed the pipe to another officer to conduct a field test. He also described his department's evidence handling protocols. He testified that the evidence sheet for the pipe contained a badge number that matched the badge number of the officer who field tested the pipe. The evidence sheet also contained the investigation number that the arresting officer assigned to Davis's case.

---

[4] Id.

[5] State v. Picard, 90 Wn. App. 890, 897, 954 P.2d 336 (1998) (quoting State v. DeCuir, 19 Wn. App. 130, 135, 574 P.2d 397 (1978)).

[6] State v. Garcia, 179 Wn.2d 828, 846, 318 P.3d 266 (2014).

[7] Id. (quoting State v. Lamb, 175 Wn.2d 121, 127, 285 P.3d 27 (2012)).

The officer testified that under his department's protocol, the evidence would be placed in temporary evidence locker, from which only an evidence technician could remove the evidence. From there, the evidence would be placed in a secure and alarmed room.

The evidence sheet for the pipe also included a sticker from the Washington State Patrol Crime Lab. The number on this sticker matched the number on the crime lab's report, which was also admitted into evidence.

The trial court did not abuse its discretion by admitting the evidence based on this testimony. At trial, the officer positively identified the pipe as the same one the officer confiscated near the time of Davis's arrest. And although it was partially broken, it was still in substantially the same condition as when he found it. And the officer's testimony about the department's protocols allowed the court to consider the likelihood that the evidence had been tampered with. Minor discrepancies, such as the fact that the pipe was partially broken, go to the weight of the evidence. They do not establish that the court abused its discretion by admitting the evidence.

Davis argues that the trial court abused its discretion because the arresting officer was not present when the pipe was field tested, packed as evidence, or sent to the crime lab. But these arguments go the evidence's weight, not its admissibility. For the reasons described earlier, the court did not abuse its discretion in admitting the pipe.

4

## POSSESSION OF A CONTROLLED SUBSTANCE

Davis argues that he established that he unknowingly possessed the controlled substance in this case. We disagree.

RCW 69.50.4013 criminalizes possession of a controlled substance. Under this statute, the State must prove that the defendant possessed the substance and that it was a controlled substance.[8] The State is not required to prove knowledge about either possession or the substance's controlled nature.[9]

To lessen "'the harshness of the almost strict criminal liability'" of this statute, the supreme court created the affirmative defense of "unwitting possession."[10] Once the State establishes a prima facie case, the defendant may establish that he unknowingly possessed the controlled substance.[11] Because unwitting possession is an affirmative defense, the defendant bears the burden of proving it by a preponderance of the evidence.[12]

We defer to the fact finder's determination as to the weight and credibility of the evidence.[13]

---

[8] State v. Bradshaw, 152 Wn.2d 528, 538, 98 P.3d 1190 (2004).

[9] State v. Staley, 123 Wn.2d 794, 799, 872 P.2d 502 (1994).

[10] City of Kennewick v. Day, 142 Wn.2d 1, 11, 11 P.3d 304 (2000) (quoting State v. Cleppe, 96 Wn.2d 373, 381, 635 P.2d 435 (1981)).

[11] Staley, 123 Wn.2d at 799.

[12] City of Kennewick, 142 Wn.2d at 11.

[13] State v. Thomas, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

Here, the pipe found in Davis's pocket contained the controlled substance. Davis testified that he found the pipe and did not know that the substance was in the pipe.

Davis argues that his conviction was improper because there was no evidence that he knew the pipe contained a controlled substance. This argument is unpersuasive.

It was Davis's burden to establish unwitting possession. The fact finder, in this case the trial court, was free to disbelieve Davis's testimony. The court identified several inconsistencies between Davis's testimony and the other evidence in the case. We defer to the fact finder's credibility determinations.[14] Substantial evidence supports the court's determination that Davis failed to meet his burden for unknowing possession.

Davis also assigns error to two of the court's findings. But his opening brief does not include any argument on these assignments of error. "A party that offers no argument in its opening brief on a claimed assignment of error waives the assignment."[15] Thus, we do not further discuss these assignments of error.

## MIRANDA

Davis also argues that the trial court admitted a statement he made during custodial interrogation in violation of Miranda. We hold that there was no custodial interrogation by a state agent.

---

[14] Id.

[15] Brown v. Vail, 169 Wn.2d 318, 336 n.11, 237 P.3d 263 (2010).

Miranda prohibits the State from using a defendant's statements resulting from "custodial interrogation" unless the defendant was informed of certain rights.[16] We presume that self-incriminating statements made in custody violate the Fifth Amendment unless the State shows that the defendant received Miranda warnings.[17]

Miranda's requirements initially applied only to law enforcement officers.[18] But Miranda now applies to any state agent "who 'testifie[s] for the prosecution' regarding the defendant's custodial statements."[19] The supreme court has noted that "'any state employee'" who conducts a custodial interrogation is likely a state agent under Miranda.[20]

Here, the loss prevention manager questioned Davis after he had been handcuffed by the arresting police officer. The State concedes that Davis was in custody and that the questions would constitute interrogation. Thus, the determinative question is whether the loss prevention manager was a state agent. We hold that he was not.

---

[16] Miranda, 384 U.S. at 444.

[17] State v. Sargent, 111 Wn.2d 641, 648, 762 P.2d 1127 (1988).

[18] Miranda, 384 U.S. at 444.

[19] State v. Heritage, 152 Wn.2d 210, 216, 95 P.3d 345 (2004) (alteration in original).

[20] Id. (quoting State v. Warner, 125 Wn.2d 876, 885, 889 P.2d 479 (1995)).

First, the loss prevention manager was not a state employee. Additionally, he was not acting on the State's behalf. He testified that he questioned Davis because Wal-Mart policy required him to write a statement. He testified:

> I have to write a statement for [Wal-Mart], because we never know what's going to happen later on down the road. And I have to answer to why this person is in the office. I have to let [Wal-Mart] know what they were saying and all this kind of stuff. So my questions are more for me.[21]

He also testified that he asked Davis questions because he enjoyed talking to people:

> And just the way I am and the way I've always been, I like to know what's going on with people, why they are doing what they are doing, what's going on in their life, and so I just ask questions. And I like to talk to them and so kind of that's just what I do.[22]

Thus, the loss prevention manager was not seeking to gather evidence against Davis on the State's behalf. Instead, he was asking questions for his private purposes.

Davis relies on State v. Heritage[23] to argue that the loss prevention manager was a state agent. But that case is distinguishable. In Heritage, the supreme court applied Miranda to park security officers who were "city employees but not commissioned police officers."[24] These officers "wore a duty belt containing pepper spray, a collapsible baton, handcuffs, a radio, and a

---

[21] Report of Proceedings (June 11, 2015) at 24.

[22] Id.

[23] 152 Wn.2d 210, 95 P.3d 345 (2004).

[24] Id. at 212.

8

flashlight holder."[25] And their duties included investigating and reporting crimes.[26] Because the officers in that case approached the defendant and "authoritatively asked questions," the court determined that a reasonable person would view the officers as law enforcement officers.[27]

But Heritage is distinguishable from the present case. Here, the loss prevention manager was not a government employee. Additionally, he was not investigating crimes on the government's behalf. And the facts of this case do not indicate that a reasonable person would believe that the loss prevention manager was a law enforcement officer. Thus, Davis's argument is unpersuasive.

We affirm the trial court's judgment and sentence.

_____
Cox, J.

WE CONCUR:

_____

_____

---

[25] Id. at 217.

[26] Id.

[27] Id.

9