IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 35210-2-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JAMES EDWARD BOYD, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — James Boyd appeals his conviction for possession of methamphetamine, primarily contending that the trial court erred in denying his motion to suppress evidence. We affirm.

FACTS

The Spokane Fire Department arrived at room 105 of the Downtowner motel in response to a 911 call to provide medical assistance to Mr. Boyd. He was combative, so assistance was sought from the police department. By the time officers arrived, Mr. Boyd had calmed down and was accepting treatment. Officers stood by in case their service was needed. The original 911 caller had also reported that Mr. Boyd was not the registered occupant of the room.

An officer called in Mr. Boyd's name and date of birth, obtained from a firefighter, while treatment was being provided. Seconds after medical assistance was

concluded, officers were alerted to an outstanding arrest warrant for Mr. Boyd. Two other officers began questioning Mr. Boyd if he was in the correct room. They had him put his shoes on. He was then arrested on the outstanding warrant.

During a pat down prior to beginning a search, an officer felt what appeared to be a syringe and asked him if there was a needle in the pocket. Mr. Boyd said yes. The syringe was extracted from the pocket and appeared to be full of heroin. A field test reported that the substance was heroin. The syringe was subsequently booked into evidence.

An initial charge of possession of heroin was filed. The contents of the syringe were emptied out and sent for laboratory testing. That testing determined that the controlled substance was methamphetamine rather than heroin. The charge was amended to reflect the test result.

The defense moved to suppress the evidence, arguing that the officers had misused their caretaking function and inappropriately seized Mr. Boyd. Testimony at the suppression hearing indicated that officers had been alerted to the existence of the arrest warrant less than ten seconds after the firefighters left the motel room. Mr. Boyd was not notified of that fact until he had put his shoes back on.

The trial court denied the motion to suppress, concluding that officers had not exceeded the scope of the community caretaking function and that the brief delay was justified while officers confirmed the existence of the arrest warrant. The case

2

No. 35210-2-III
*State v. Boyd*

subsequently proceeded to jury trial. The defense argued the inconsistency between the

field test and the laboratory test indicated someone may have tampered with the evidence.

Nonetheless, the jury convicted Mr. Boyd as charged.

He timely appealed to this court. A panel considered the case without hearing

argument.

ANALYSIS

This opinion addresses two issues.[1] First, we consider Mr. Boyd's challenge to the

suppression hearing ruling. We then turn to his argument that the test results should not

have been admitted into evidence because of a possible break in the chain of custody of

the controlled substance.[2]

---

[1] The brief of appellant also claims that the court erred by imposing the $800 in mandatory LFOs and that this court should waive appellate costs. The trial court had no authority to waive the mandatory LFOs, so we will not further discuss that issue. *State v. Mathers*, 193 Wn. App. 913, 918-919, 376 P.3d 1163 (2016). We defer the appellate cost issue to our commissioner in accordance with RAP 14.2 in the event that the State claims costs on appeal, although we note that Mr. Boyd has not filed a report of continued indigency in accordance with our General Order.

[2] Mr. Boyd also filed a personal statement of additional grounds that raises challenges to the suppression ruling. Since that matter is adequately briefed by appointed counsel, we need not address it. RAP 10.10(a). However, we will comment on one of his arguments. He contends that the firefighters violated his health care privacy rights by giving his identification information to the police. This argument fails because there is no violation of the statute unless both personal identification information and health care information are disclosed. *Prison Legal News, Inc. v. Dep't of Corr.*, 154 Wn.2d 628, 645, 115 P.3d 316 (2005). This record does not show that any health care information was disclosed to police.

No. 35210-2-III
*State v. Boyd*

*Suppression Hearing*

Mr. Boyd argues that the trial court erred in determining that officers were still acting in their caretaking capacity when they discovered and arrested him on the outstanding warrant. Because there were unresolved issues relating to Mr. Boyd's right to be in room 105, the police were still acting in the caretaking function.

One exception to the constitutional protection against warrantless searches and seizures is the community caretaking function. *Cady v. Dombrowski*, 413 U.S. 433, 93 S. Ct. 2523, 37 L. Ed. 2d 706 (1973). This police function is "totally divorced from a criminal investigation." *State v. Kinzy*, 141 Wn.2d 373, 385, 5 P.3d 668 (2000), *cert. denied*, 531 U.S. 1104 (2001). Officers may perform routine checks on an individual's health and safety and courts will assess those encounters by balancing the individual's privacy interest against the public's interest in having police perform the caretaking function. *Id.* at 386-388, 394. A specific type of community caretaking is the emergency aid function. That function applies when an officer subjectively believes someone needs assistance, a reasonable person would agree with that assessment, and there is a connection between the need and the police actions. *Id.* at 386-387. The emergency aid function typically "involves circumstances of greater urgency and searches resulting in greater intrusion." *Id.* at 386. In evaluating a general caretaking stop, courts look to the

4

reasonableness of the officer's behavior. *State v. Acrey*, 148 Wn.2d 738, 753-754, 64 P.3d 594 (2003).[3]

The trial court concluded that the behavior of the police was reasonable and we agree. There was a very brief ten second period of time between when the firefighters departed and the police confirmed the existence of the warrant. While it was reasonable to wait for confirmation, the police could have acted on the preliminary information. They also still had the unresolved issue of the defendant's presence in a room that he had not rented. It was reasonable to determine whether he was a guest or an uninvited visitor. It also made great sense for police to ask Mr. Boyd to put his shoes on before informing him that he was under arrest for the warrant. The risk of a confrontation justified a brief delay in announcing the arrest warrant in order that Mr. Boyd would be properly attired when he was removed from the motel.

In short, the brief ten second delay while officers confirmed the existence of an arrest warrant and sorted out the defendant's status in the room was consistent with the caretaking function. The officers' caretaking purpose had not been completed with the departure of the medical care providers. The subsequent questioning and dressing of Mr. Boyd did not unduly extend the caretaking visit.

---

[3] Since the police were present to assist firefighters with the medical emergency, it is arguable that this case involves the emergency aid function rather than the general community caretaking function. Nonetheless, the firefighters had departed before the seizure and the trial court analyzed the matter as a caretaking issue. We will as well.

Officers acted reasonably and consistent with their caretaking function in staying on briefly after the medical caregivers had departed. The trial court did not err in denying the motion to suppress.

*Chain of Custody*

Mr. Boyd also argues that the conflicting test results indicate that the chain of custody was interrupted, thus rendering the evidence insufficient to support the conviction. That argument is not logical and fails for two distinct reasons.

As to the chain of custody argument, Mr. Boyd has not established any break in the chain. In criminal cases, evidence is customarily identified by the testimony of each custodian in the chain of custody from the time the evidence was acquired. *State v. Campbell*, 103 Wn.2d 1, 21, 691 P.2d 929 (1984). The proponent need not establish an unbroken chain of custody. *State v. Picard*, 90 Wn. App. 890, 897, 954 P.2d 336 (1998). An allegation that the evidence may have been tampered with goes to weight, not admissibility. *Id.*

Even if a genuine break in the chain of custody had been established, the appropriate time to raise a foundation objection was when the State sought to admit the evidence. A successful argument could have led to the exclusion of the controlled substance test result and a dismissal of charges. Here, however, there was no direct indication that the chain of custody had been tampered with. Instead, the defense merely argued that the jury should draw the inference that someone had swapped drug samples

6

from the fact that the two tests conflicted. This allegation merely went to the weight to be accorded the evidence and was not a basis for exclusion. *Id.*

The second reason the chain of custody claim fails is that it is presented as a sufficiency of the evidence challenge. However, chain of custody does not present a sufficiency problem. Sufficiency of the evidence is considered under well settled standards. This court reviews the appellate record to determine if there was evidence from which the trier of fact could find each element of the offense proved beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Green*, 94 Wn.2d 216, 221-222, 616 P.2d 628 (1980). The reviewing court will consider the evidence in a light most favorable to the prosecution. *Id.* The appellate court's focus is on the evidence actually presented to the jury. *State v. Jackson*, 82 Wn. App. 594, 608, 918 P.2d 945 (1996). Reviewing courts also must defer to the trier of fact "on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence." *State v. Thomas*, 150 Wn.2d 821, 874-875, 83 P.3d 970 (2004). "Credibility determinations are for the trier of fact and are not subject to review." *Id.* at 874.

Proper consideration of these standards leads to the easy conclusion that the evidence was sufficient. As charged, the State needed to establish that Mr. Boyd possessed methamphetamine. The evidence allowed the jury to conclude that Mr. Boyd possessed the syringe in his pocket. The report of the laboratory technician was that the

7

No. 35210-2-III
*State v. Boyd*

contents of the syringe were methamphetamine. Ergo, the evidence allowed the jury to find each of the necessary elements and was sufficient.

The allegation that there was a break in the chain of custody fails this standard in several respects. First, it does not view the evidence in a light most favorable to the State. Second, it does not actually focus on the evidence. Instead, the argument focuses on mere argument about an inference to be drawn from the facts. Third, the argument ignores the fact that potential breaks in the chain of custody are merely matters of weight to be considered by the trier of fact. Here, this argument was made to the jury and rejected by that body. This court does not get to countermand that decision. *Id.*

The evidence was sufficient to allow the jury to make the decision it did.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____          _____
Fearing, J.                                      Pennell, A.C.J.

8