[No. 23512. Department One. April 4, 1932.]

THE STATE OF WASHINGTON, *Respondent*, v. FRED PFEULLER, *Appellant*.[1]

*Wm. A. Johnson*, for appellant.

*Charles R. Denney* and *Francis W. Mansfield*, for respondent.

PARKER, J.—The defendant, Pfeuller, was, by information filed in the superior court for Snohomish county, charged with the crime of arson in the second degree, in that he did,

" . . . in the county of Snohomish, state of Washington, on or about the 10th day of April, 1931, wilfully, unlawfully and feloniously burn and set fire to the building and barn of Lizzie Geue."

Trial of the case in that court, sitting with a jury, resulted in a verdict finding him guilty as charged. Final judgment was accordingly rendered against him, from which he has appealed to this court.

[1]Reported in 9 P. (2d) 785.

The principal contention here made in behalf of appellant is that the evidence does not support the verdict and judgment rendered against him, and that therefore he is entitled to reversal of the judgment and dismissal of the case. We think the following summary of the facts is as favorable to the state's claim of appellant's guilt as can be made from the evidence introduced in behalf of the state. No evidence was introduced in behalf of the appellant.

At the time in question, Mrs. Lizzie Geue owned and lived upon her farm, situated about a mile east of the town of Snohomish. Her dwelling house was near an east and west county highway running along the south boundary of her farm. Her barn, the one appellant is charged with burning, was about one hundred yards north and a little east of her house. Walter Geue, her son, lived across the highway on the south side thereof. He had charge of his mother's farm, having rented it from her. He worked and managed the farm and the stock thereon as his principal occupation.

Appellant lived on his own place a little more than a quarter of a mile west of Mrs. Geue's barn, his house facing east on a road that ran north from the east and west highway. Mrs. Geue's farm extended west to that road. The portion of Mrs. Geue's farm extending from the barn west to that road was, for the most part, open land over which the cows roamed at will. Extending partially across this open land, roughly on a line between Mrs. Geue's barn and appellant's house, was a cow path, along which one would ordinarily proceed if he were walking between appellant's house and Mrs. Geue's barn.

Early in the evening of April 10, 1931, Walter Geue was at the barn feeding the stock. Upon completion of that chore, he left the barn before dark. According to his testimony, there was then no readily inflam-

mable material in or about the barn other than hay; that is, there was no oil, gas, kerosene, matches, or similarly inflammable material. Nor was there any electric wiring in or about the barn. He so testified from his general acquaintance with the barn and its contents. He evidently was the one about the place who was in a general way best acquainted with the barn. He did not smoke. The doors of the barn, however, were not locked. Indeed, one of the openings had no door in it at all; so its interior was readily accessible to any person who desired to enter it. Walter did not return to the barn until about 10:15 o'clock that night, very soon after the fire was discovered.

The fire was first observed by neighbors at about 10:10 o'clock. Mrs. Geue and Walter were advised of it by telephone from a neighbor who was evidently the first to observe it. The northwest corner of the barn was then considerably enveloped in flames. One of the haymows, with a considerable quantity of hay therein, was in that corner of the barn. The voluntary fire department of Snohomish came soon, as did a number of other people, including appellant. He was about the fire for a period of about an hour, until the barn was practically consumed and the people began to go away. He was, while there, aiding in keeping the cows away from the barn; that is, in preventing them from running into their usual places in the barn as cows and stock are wont to do when their home is burning.

The land around the barn is low, flat bottom land, and was then wet, soft and muddy; that is, it was in the usual condition of used barnyards when situated on soft, wet, low ground. Appellant wore rubber boots while at the fire. During the morning after the fire, his boots were found in his home. They were wet and muddy inside. In explanation thereof, he told the officer making the investigation as to the cause of the

fire that, when he was chasing the cows to keep them away from the barn and the fire, his boots came off in the mud, and he immediately put them on again. When asked what he did with his socks, he said he had burned them.

During the morning following the fire, a pair of oxford Florsheim shoes were found just north of the barn. There were no shoe tracks there other than the tracks in which the shoes were found. "They were laced, laces pulled up, but they were not knotted," as the finder testified. Those shoes were fitted into a few tracks found along a short portion of the cow path, between the barn and appellant's house. They seemed to be the shoes which had made those tracks. Those tracks were nearer to the barn than to appellant's house. No such tracks were found elsewhere between the barn and appellant's house. Those shoes were shown to appellant. "He was asked if they were his shoes. He did not either deny or affirm. He said if they were his shoes, they were picked out of the ash barrel." His explanation was that he had discarded shoes like them, and had disposed of them in that way. They were shoes of a very common make and of a very common size.

During the morning following the fire, there were found on the ground, among the remains of the fire, portions of what apparently had been a glass jug, partially melted. This seems to suggest moonshine rather than kerosene or some such inflammable material. There was no odor of oil, kerosene or similarly inflammable material about the barn or the fire at any time.

There is not the slightest evidence of any ill-will existing between appellant and the Geues. There is positive, direct evidence to the contrary. Walter Geue testified, on cross-examination, as follows:

"Q. How long have you known Mr. Pfeuller? A. All his life. Q. You and he were raised there on those adjoining places? A. Yes, sir. Q. Have your relations been friendly or otherwise? A. Been friendly. Q. Been very friendly? A. Yes. Q. All the time? A. Yes, sir."

Nor is there the slightest evidence pointing to any motive on the part of appellant for burning Mrs. Geue's barn, such as might be prompted by any money consideration, or any possibility of profit which he might derive as the result of such burning.

■ The evidence relied upon by the prosecution to support a conviction of appellant is wholly circumstantial. We have here, applicable to our inquiry, not only the general presumption of innocence of appellant, but also the presumption in his favor, well stated in the following observations made by Judge Crow, speaking for this court in the arson case of *State v. Pienick*, 46 Wash. 522, 90 Pac. 645, 11 L. R. A. (N. S.) 987, as follows:

"Proof of the single fact that a building has been burned does not show the *corpus delicti* of arson, but it must also appear that it was burned by the wilful act of some person criminally responsible, and not as the result of natural or accidental causes. Where a building is burned, the presumption is that the fire was caused by accident or natural causes rather than by the deliberate act of the accused. 3 Cyc. 1003; *State v. Jones,* 106 Mo. 302, 17 S. W. 366; *State v. Millmeier,* 102 Iowa 692, 72 N. W. 275; 4 Elliott, Evidence, § 2807.

"Circumstantial evidence only was produced by the state to show that the fire was of an incendiary character. No one saw appellant fire the building, nor has any motive for his doing so been shown. The arrangements of the boxes, the position of the clothing, the odor of kerosene, and the recent presence of appellant in the store are the circumstances relied upon to show that the fire was of an incendiary character."

The evidence in that case was held insufficient to sustain a conviction. The circumstantial evidence in this case, as we view it, is no more convincing of a criminal burning of the barn by appellant than was the circumstantial evidence in that case convincing of the criminal burning of that building by the defendant in that case; and plainly there is as complete want of proof of motive for criminal burning in this case as there was in that case. Indeed, we have here even some affirmative proof of absence of criminal motive on the part of appellant, in that it affirmatively appears that there was and had been for years a very friendly relationship between him and Mrs. Geue and her son Walter. It seems to us that the evidence fails to support the conclusion that appellant is guilty of the crime here charged against him with that degree of certainty required in such cases.

We do not overlook our prior decisions particularly relied upon by the prosecution; the ones principally so relied upon being: *State v. McLain,* 43 Wash. 267, 86 Pac. 390; *State v. Nikolich,* 137 Wash. 62, 241 Pac. 664; *State v. Nichols,* 143 Wash. 221, 255 Pac. 89; *State v. Snyder,* 146 Wash. 391, 263 Pac. 180; and *State v. Despain,* 152 Wash. 488, 278 Pac. 173. In each of those cases, there was convincing proof of motive on the part of the accused for the criminal burning charged against him, consisting of his pronounced ill-will against the owner of the building, his threats against the owner of the building, or his interest in the collection of over-insurance.

In *State v. Smith,* 142 Wash. 57, 252 Pac. 530, the evidence was held sufficient to sustain a conviction practically without any discussion as to what it consisted of. The conviction in that case, however, was reversed and a new trial ordered because of the trial court's failure to give a requested instruction in

harmony with the holding in *State v. Pienick,* 46 Wash. 522, 90 Pac. 645, 11 L. R. A. (N. S.) 987.

The following well-considered decisions lend strong support to our conclusion here reached: *State v. Goldstein,* 225 S. W. (Mo.) 911; *State v. Cristani,* 192 Iowa 615, 185 N. W. 111. No decision has been brought to our notice where, in the entire absence of any proof of motive, a conviction for arson has been sustained upon exclusively circumstantial proof of no greater weight than we have in this case.

We conclude that the judgment must be reversed and the cause dismissed. It is so ordered.

TOLMAN, C. J., MITCHELL, BEELER, and HERMAN, JJ., concur.