[No. 29246. Department One. April 13, 1944.]

THE STATE OF WASHINGTON, *Respondent,* v. JAMES E. KIRKBY, *Appellant.*[1]

*John C. Richards* and *C. W. Jordan,* for appellant.

*Leslie R. Cooper, C. P. Brownlee,* and *Thomas G. McCrea,* for respondent.

GRADY, J.—The appellant, James E. Kirkby, appealed to this court from a judgment of the superior court for Snohomish county, entered upon the verdict of a jury finding him guilty of arson in the first degree.

The appellant contends that the evidence is insufficient to show beyond a reasonable doubt that the fire was of in-

[1]Reported in 147 P. (2d) 947.

cendiary origin, or that he was the one who set the fire, and that, because of misconduct of counsel for the state, the court should have either ordered a mistrial or granted a new trial.

■ As the evidence in many important parts is of a circumstantial character, we will refer to it in connection with the contentions made by appellant rather than by making a statement of what might be concluded the jury by its verdict found or would have been warranted in finding. In our review of the record, it is not our province to pass upon the weight to be given to, or the sufficiency of, the evidence or the credibility of the witnesses, as those were all questions for the jury to determine. We must determine from the record whether there is competent evidence supporting the charges that the fire was of an incendiary origin and that the appellant wilfully caused the fire.

■ The building in question had formerly been a garage and gas station, but was remodeled into an apartment house and a store. The filling station remained intact and continued to be in use. The building was on a slope, the store and the apartments being on the level, and there was a partial basement underneath it. There was also, as a part of the basement, a grease pit which had been in use when the garage was in operation. One side of the pit had not been enclosed and it was accessible to anyone passing by on that side of the building. An accumulation of oil and grease remained, to which had been added refuse, rags, and other inflammable material. The basement was also open at the rear. Rest rooms were built in the basement, and a short distance in the rear of the building there were some cabins.

There is evidence in the record to the effect that the fire started between 11:15 and 11:30 at night. A few minutes before the first blaze was observed, a person was seen walking down the driveway on the north side of the building. The first appearance of the fire was a flame under the porch on the north side, and it looked like the glow from an open furnace door, then suddenly there was a great

burst of flame. Just after this a person was seen running across the street upon which the building faced. The fire had its origin in the grease pit, and to the firemen it appeared as though a volatile liquid were burning. Investigation the next morning indicated that partially consumed rags in the grease pit were saturated with a volatile liquid, such as gasoline or kerosene. It is our opinion that this chain of circumstances furnished sufficient competent evidence upon which the jury could properly base a finding that the fire was of incendiary origin.

The appellant and his son at one time had held a lease on the property involved in this case. He sold the lease, but later on several occasions had tried to repurchase it without effect. He expressed to the purchaser a feeling that he had not been fairly treated in connection with the transaction. He became angry when the owner of the lease refused to sell it to him, assaulted her, and voiced a threat to kill the whole family. The morning of the day of the fire he renewed his efforts to purchase the lease and, when met with a refusal, stated, "You will be sorry for it if you don't sell it."

On that same day, the appellant purchased a gallon of kerosene from a service station near where he resided. He was the owner of a Chevrolet automobile, and it carried "A" and "C" gasoline ration stickers. Shortly before the fire, a Chevrolet automobile, with "A" and "C" stickers, was seen going slowly up the incline of the street on one side of the building. Its lights were not burning. The witness stated that she had seen the appellant's car many times, and that the car she saw on this occasion was the one belonging to him. Shortly after this another witness saw a person walking down the driveway on the north side of the building. He was wearing an overcoat and hat. Right after the fire started the person described as the man who had on an overcoat and hat was seen running across the street in front of the building. He appeared to be fairly tall and somewhat heavily built. As he ran he seemed to stoop over and to swing his body, and his actions ap-

peared to be that of an elderly man. (The appellant was of the age of seventy-four years.)

After the appellant had been arrested, his room was searched with his permission, and there was found in a closet a pair of trousers, which he identified as his own, that smelled of kerosene. Among his effects was a fuel ration book, and through that was traced the purchase of a gallon of kerosene the day of the fire. By the use of pieces of saturated rags found where the fire started and a sample of the kerosene sold by the service station where appellant made the purchase of the gallon referred to, the expert who made an analysis gave it as his opinion that the volatile fluid with which the rags were saturated was of the same type as the kerosene handled by the service station.

All the testimony pertaining to the appellant as being the person who had been seen going to and coming from the scene of the fire was denied by him, and the other circumstances were all explained by him and his witnesses consistent with his innocence, and a number of witnesses testified that, at the time of, and for sometime prior to, the fire, he was at another place remote from the scene of the fire, and, if accepted by the jury, would have furnished a complete alibi. However, the jury, having had the benefit of seeing all the witnesses, including the appellant, and hearing them testify, did not accept their testimony, but came to the conclusion that the appellant was the person who had set the fire.

The trial judge reviewed the whole record upon motions in arrest of judgment and for a new trial, and reached the conclusion that there was sufficient evidence to support the verdict and refused to grant a new trial. On this branch of the case, we also are of the opinion that there was competent evidence of sufficient probative value to submit to the jury bearing on the identity of appellant as the person who had set the fire.

We have considered *State v. Pienick,* 46 Wash. 522, 90 Pac. 645, 11 L. R. A. (N. S.) 987, and *State v. Pfeuller,* 167 Wash. 485, 9 P. (2d) 785, cited by appellant in support of his argu-

ment that the evidence is not sufficient to support the verdict of the jury. The principles of law laid down in those cases, so far as applicable to this case, were embodied in the instructions to the jury given by the trial court. The missing links found by the court in them and justifying in each case the conclusion that, as a matter of law, no competent evidence existed supporting the essential element or elements constituting the offense charged are not lacking in this case. In them there was either no proof that the fire was of an incendiary origin or that the accused had caused the fire. There was also the absence of a motive on the part of each accused person to cause an incendiary fire. In this case, there is evidence upon all these—incendiary origin, identity of the accused, and a motive on his part.

█ In his claim that there was misconduct on the part of counsel for the state, the appellant asserts that an attack was made upon his character when he had not put it in issue.

When the lease of the property was referred to in the evidence it appeared that it had been taken in the name of appellant's son because appellant thought it might have some effect on his status as a senior citizen; also, it appeared that he had severed his connection with an employer. These were matters that incidentally crept into the evidence as a part of the unfolding of the events leading up to the main issues. They had no bearing on the character of the appellant and were not alluded to for that purpose.

█ The other act of alleged misconduct consisted of an attempt to prove by a witness for appellant that she had previously been convicted of a violation of the liquor laws. After the witness had given a negative answer to a question relative to a conviction, a court record was produced, but before its contents were referred to, except, perhaps, by the form of a question propounded, counsel for appellant remarked to the court that the record showed the case against the witness had been dismissed. In the colloquy between counsel which then ensued, it developed that the record showed the witness had been convicted in police court, but had taken an appeal, subsequently served the jail sentence

imposed, and then the case was dismissed with prejudice. When the record was offered in evidence, the court remarked in the presence of the jury, "There is no evidence identifying this exhibit as having anything to do with the witness," and refused to receive it in evidence. Under these circumstances, we find no prejudice to appellant resulted.

The record as a whole shows that appellant had a fair and impartial trial and was ably represented, and we find no reason why the verdict of the jury should be set aside.

The judgment is affirmed.

SIMPSON, C. J., BEALS, JEFFERS, and STEINERT, JJ., concur.