**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
MARCH 25, 2021

*Gonzáles C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
MARCH 25, 2021

*Susan L. Carlson*
SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 98256-2 |
| Respondent, | ) | |
| v. | ) | En Banc |
| TANNER LEE CORYELL, | ) | |
| Petitioner. | ) | Filed: <u>March 25, 2021</u> |

MADSEN, J.—This case concerns the test to be applied when determining whether to instruct the jury on a lesser included or lesser degree offense. Under *State v. Workman*, 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978), a defendant is entitled to a lesser included offense instruction if (1) each of the elements of the lesser offense is a necessary element of the offense charged (legal prong) and (2) evidence in the case supports an inference that the lesser crime was committed (factual prong). Although this court has continued to follow the *Workman* test, confusion has arisen after some of our opinions have expressed *Workman*'s factual prong as requiring evidence "that *only* the lesser

No. 98256-2

included/inferior degree offense was committed to the *exclusion* of the [greater] charged offense." *See, e.g.*, *State v. Fernandez-Medina*, 141 Wn.2d 448, 455, 6 P.3d 1150 (2000).

Tanner Lee Coryell argues the "exclusion" requirement in *Fernandez-Medina* misconstrues *Workman*—that it is incorrect and harmful and should be overturned. We disagree with Coryell's premise: properly understood, *Fernandez-Medina*'s "to the exclusion of the charged offense" language does not alter the *Workman* test. A defendant is still entitled to a lesser included offense instruction when a jury could reasonably find, based on evidence submitted and the jury's decision about whether it is credible or not, that the defendant committed only the lesser offense. This is such a case. Accordingly, we vacate Coryell's conviction and remand the case for further proceedings consistent with this opinion.

## FACTS

Coryell and Autumn Hart'Lnenicka lived together. One morning, the couple argued. Hart'Lnenicka accused Coryell of cheating on her with an ex-girlfriend. While they were talking, Coryell was playing a video game, and Hart'Lnenicka unplugged the game console, threatening to break it. Coryell took the console from Hart'Lnenicka and set it on the coffee table. At some point, Coryell pushed Hart'Lnenicka to the ground. Eventually, Officer Shon Malone responded to a 911 call at the apartment and arrested Coryell.

Coryell and Hart'Lnenicka agree on the preceding events. They dispute the events that occurred after Coryell pushed Hart'Lnenicka to the ground.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 98256-2

*Coryell's Testimony*:  According to Coryell's testimony at trial, during this interaction, he continuously asked Hart'Lnenicka what was going on.  Coryell said Hart'Lnenicka hit his face, which caused his glasses to fly off past the coffee table.  After retrieving the glasses, Coryell said Hart'Lnenicka grabbed the television and entertainment center and threatened to break it.  Coryell then took the television and pushed the entertainment center back onto the wall.  In response, Hart'Lnenicka took Coryell's glasses and twisted them until the lenses popped out.  She threw the frames behind him and one of the lenses across the room.  Coryell picked up the lens at his feet and put it on the breakfast table, intending to fix his glasses.  As he did so, Hart'Lnenicka started to hit and scratch his face.  Coryell pushed her off, causing her heel to hit the side of the wall; Hart'Lnenicka fell, scraping her back on the front door handle, and hit the floor.

Although Coryell did not admit to putting his hands around Hart'Lnenicka's neck at any point during their interactions, he admitted that he pinned her against the wall because she was scratching his face.  But he testified that he did not strangle her.

At some point, Coryell sat at the breakfast table to fix his glasses.  It was then that Hart'Lnenicka ran to the bedroom, grabbed her phone and car keys, and ran out the front door.  Coryell testified that that was the last time he saw her that day.

*Hart'Lnenicka's Testimony*: Hart'Lnenicka testified that after Coryell pushed her to the ground, he put his hands around her neck, but she testified that she could still talk and breathe and did not feel as if she was going to pass out.  Then, Coryell took hold of

3

No. 98256-2

her ankles and dragged her from the apartment through the front door, tearing her pants in the process. As a result, Hart'Lnenicka sustained a concrete burn on her back.

While Hart'Lnenicka was outside of the apartment, Coryell locked the front door. She then knocked on the door, which Coryell opened. Hart'Lnenicka ran to the laundry room; Coryell followed her, pushed her down for a second time, and choked her. Hart'Lnenicka testified that she could breathe, though it was difficult. In their struggle, Hart'Lnenicka grabbed and cut Coryell's arm, which prompted him to pick her up by her neck and slam her head five times against the laundry room doors. Hart'Lnenicka could not breathe. And, Coryell threatened that he was "'not afraid to kill [her].'" 1 Verbatim Report of Proceedings (VRP) (Jun. 25, 2018) at 48, 50. Hart'Lnenicka grabbed Coryell's glasses and threw them, scratching him in the process. This caused Coryell to let go of her throat.

As Hart'Lnenicka tried to crawl toward the kitchen, Coryell kicked her across the floor and berated her. To escape, Hart'Lnenicka ran to the bedroom and locked the door. Coryell unlocked the bedroom door and threw Hart'Lnenicka's possessions into bags. Hart'Lnenicka, grabbed her keys and phone, ran out the front door, and called 911.

*Police Testimony*: Officer Malone also testified at trial. As he discussed his domestic violence dispute experience, Officer Malone noted he had responded to over 1,600 domestic violence calls, 20 of which involved strangulation. Officer Malone's training and experience involved looking for signs or symptoms of strangulation.

4

No. 98256-2

"Depending on the level [of force]," Officer Malone testified, he would look for "welts, possibly bruising around the throat and neck area" and petechial hemorrhaging (broken blood vessels around the eyes or mouth, or in other areas of the skin). *Id*. at 107. Officer Malone indicated not all cases of strangulation present the same physical symptoms on a person. *Id*. However, he acknowledged that the existence of these types of injuries can indicate oxygen deprivation and are important to identify if present.

Officer Malone also stated that he saw no petechial hemorrhaging in the photographs presented at trial and that he observed no signs of it on Hart'Lnenicka on the day of the alleged assault.

Officer Malone further testified that Hart'Lnenicka told him that Coryell had kicked her out of the apartment, choked her, thrown her to the ground, and slammed her head into the laundry room doors. Officer Malone described Hart'Lnenicka's physical appearance: her upper chest appeared to be red, an approximately two-inch vertical abrasion ran down the left side of her neck, and both sides of her neck showed signs of welts—possibly caused by fingers gripping her neck.

Officer Malone and his partner spoke with Coryell, who confirmed he had been dating Hart'Lnenicka, they shared an apartment together, and they had argued because Hart'Lnenicka accused him of cheating on her. Coryell added that in the course of their interaction, Hart'Lnenicka grabbed his game console and threatened to break it; in response, he grabbed it from her and pushed her to the ground.

5

Coryell also told Officer Malone that Hart'Lnenicka scratched his face and broke his glasses. Officer Malone noted scratches on Coryell's face, one on his nose and one on his forehead; a scratch on his right arm, on the back of his tricep; and a scratch on his right hand. Officer Malone testified that he twice asked Coryell if he had put his hands around Hart'Lnenicka's neck. "The first time we spoke, I had mentioned did you ever put your hands around her neck, and [Coryell] said, ['W]ell if I did, I don't remember.['] The second time that he had told me, he completely denied ever grabbing her . . . around the neck." *Id*. at 117-18. Officer Malone then arrested Coryell for second degree assault.

During the arrest, Coryell responded that it was not fair that he was being arrested when Hart'Lnenicka hit him first. Officer Malone advised Coryell that Coryell could give a more detailed statement once he was booked at the Thurston County jail. During their second conversation, Coryell confirmed the sequence of events but denied ever grabbing Hart'Lnenicka around the neck.

Coryell was charged with two counts of assault. The first count was second degree assault by means of strangulation and the second count was fourth degree assault. Coryell requested a lesser included offense instruction for fourth degree assault for count one. In support of his request, Coryell argued that any force he used was in self-defense and defense of his property or that his actions did not prevent Hart'Lnenicka from breathing.

The trial court declined to give the requested fourth degree assault instruction. Relying on *Workman* and *State v. Porter*, 150 Wn.2d 732, 82 P.3d 234 (2004), the court

6

stated the standard for such instructions, "'The evidence must raise an inference that only the lesser included offense was committed to the exclusion of the charged offense.'" 2 VRP (Jun. 26, 2018) at 208-09. The court reasoned that the testimony showed either Hart'Lnenicka was strangled or was not, and that there was no testimony from Coryell that he put his hands around her neck but did not strangle her. The court concluded that as defined by law, a fourth degree lesser offense instruction was improper.

The jury convicted Coryell on both counts. Coryell appealed his conviction. In an unpublished opinion, the Court of Appeals affirmed the trial court's decision denying a lesser degree instruction. *State v. Coryell*, No. 52369-8-II, slip op. at 6-9 (Wash. Ct. App. Mar. 3, 2020) (unpublished), http://www.courts.wa.gov/opinions/pdf/D2%2052369-8-II%20Unpublished%20Opinion.pdf. We granted Coryell's petition for review.[1] *State v. Coryell*, 195 Wn.2d 1030 (2020).

Amicus Washington Association of Criminal Defense Lawyers (WACDL) submitted briefing in support of Coryell.

ANALYSIS

At issue in this case is whether the language "to the exclusion of the charged offense" is a deviation from *Workman*'s factual prong. The standard of review applied to jury instructions depends on the trial court's decision under review. *State v. Condon*, 182 Wn.2d 307, 315-16, 343 P.3d 357 (2015). "If the decision was based on a factual

---

[1] Coryell also argued his conviction violated double jeopardy principles. He asserted that only one continuous assault occurred. The Court of Appeals found no double jeopardy violation, affirming the conviction on this ground as well. *Coryell*, slip op. at 10-12. Coryell does not raise double jeopardy here.

7

determination, it is reviewed for abuse of discretion." *Id*. "If it was based on a legal

conclusion, it is reviewed de novo." *Id*. at 316.

In this case, the trial court's decision regarding the lesser offense instruction had

both factual and legal components. The trial court concluded as a matter of law that

Coryell was not entitled to the lesser included instruction on the second degree assault

unless there was evidence that Coryell committed only the lesser crime to the exclusion

of the greater. That decision is reviewed de novo. The trial court concluded as a matter

of fact that the evidence did not support an inference that Coryell committed only fourth

degree assault. That decision is reviewed for abuse of discretion.

Both parties agree that *Workman* provides the correct test. However, Coryell

argues that our cases recognize two inconsistent versions of *Workman*: the "inference"

standard originally established in *Workman*, 90 Wn.2d at 448 ("the evidence in the case

must support an inference that the lesser crime was committed"), and the "exclusion"

standard first articulated in *Fernandez-Medina*, 141 Wn.2d at 455 ("the evidence must

raise an inference that *only* the lesser included/inferior degree offense was committed to

the exclusion of the charged offense"). We are asked to resolve this tension.

Coryell asserts that the "exclusion" standard misinterprets *Workman*'s inference

requirement.[2] Further, he argues the cases requiring evidence showing the commission

of the lesser offense to the exclusion of the charged offense are not based on any prior

---

[2] Although Coryell cites *Porter* for "to the exclusion of the charged offense" language, *Fernandez-Medina* first used this language. We will therefore refer to *Fernandez-Medina* as the source of the exclusionary standard.

case law and constitute dicta. Coryell also contends that the exclusion standard is incorrect and harmful, and should be reversed.[3]

Read in isolation, we might agree that the language in *Fernandez-Medina* departs from *Workman*. But in context, it is an attempt to state more clearly a principle that is simple in the abstract and often complicated in the specific: a defendant is entitled to a lesser included instruction based on the evidence actually admitted. A defendant is not entitled to a lesser included instruction merely because a jury could ignore some of the evidence. The factual prong of *Workman* is satisfied only if based on some evidence admitted, the jury could reject the greater charge and return a guilty verdict on the lesser.

A. Lesser Offenses

RCW 10.61.003 provides that where an offense consists of different degrees, "the jury may find the defendant not guilty of the degree charged in the indictment or information, and guilty of any degree inferior thereto." Additionally, a defendant "may be found guilty of [a lesser included offense], the commission of which is necessarily included within that with which he or she is charged in the indictment or information." RCW 10.61.006.

Since publishing *Workman* in 1978, this court has largely employed the factual prong as articulated in that decision—that is, considering whether the evidence positively implied that the lesser crime was committed. *See, e.g.*, *State v. Smith*, 115 Wn.2d 434, 442, 798 P.2d 1146 (1990) (affirming a theft conviction because the defendant did not

---

[3] Coryell urges this court to reverse the "exclusion" standard, but not to reverse any decision employing it.

produce evidence to support a lesser included offense instruction); *State v. Speece*, 115 Wn.2d 360, 363, 798 P.2d 294 (1990) (affirming a burglary conviction because there was no affirmative evidence in the record to support a lesser included instruction); *see State v. Brown*, 127 Wn.2d 749, 756-57, 903 P.2d 459 (1995) (reversing a rape conviction because the trial court erred in giving the lesser included instruction). In *State v. Fowler*, this court explained,

> It is not enough that the jury might simply disbelieve the State's evidence. Instead, some evidence must be presented which affirmatively establishes the defendant's theory on the lesser included offense before an instruction will be given.

114 Wn.2d 59, 67, 785 P.2d 808 (1990), *overruled on other grounds by State v. Blair*, 117 Wn.2d 479, 816 P.2d 718 (1991). The type of evidence that "must be presented which affirmatively establishes the defendant's theory on the lesser included offense" is not limited to evidence elicited on direct examination; in particular cases, it might include evidence elicited on cross-examination, such as impeachment evidence, evidence of bias, or inability to recall.

Although *Workman* has been acknowledged as the correct test, this court has, on occasion, described that test in different language, which has caused some confusion. In *Fernandez-Medina*, for example, we examined *Workman*'s factual prong. 141 Wn.2d at 455. In that case, the trial court declined to give a jury instruction on second degree assault as an inferior degree offense to the first degree assault charges. *Id*. at 452. On appeal, the defendant claimed the trial court prevented him from presenting to the jury his theory of the case: that he committed only the inferior degree offense of second degree

assault. *Id.* at 452-53. The State responded that the instruction was not warranted because Fernandez-Medina had argued an alibi defense and, thus, the evidence presented was insufficient to support the proposed instruction. *Id.*

We reversed the trial court's ruling denying the requested instruction. *Id.* at 450. We noted that while Fernandez-Medina had requested an *inferior degree* offense instruction, this court used the lesser included test from *Workman*, explaining that the test for an instruction on an inferior degree offense and a lesser included offense "differs . . . only with respect to the legal component of the test." 141 Wn.2d at 455. *Fernandez-Medina* explained that *Workman*'s factual prong

> include[d] a requirement that there be a factual showing more particularized than that required for other jury instructions. Specifically, we have held that the evidence must raise an inference that *only* the lesser included/inferior degree offense was committed to the exclusion of the charged offense.

*Id.* at 455 (citing *State v. Bowerman*, 115 Wn.2d 794, 805, 802 P.2d 116 (1990); *State v. Peterson*, 133 Wn.2d 885, 891, 948 P.2d 381 (1997)).

Under that standard, the *Fernandez-Medina* majority concluded a lesser included instruction was warranted. 141 Wn.2d at 450. Although the defendant had claimed alibi, he also argued there was testimony that the clicking sound the victim heard was not caused by the pulling of a trigger but was a result of other sounds made by the gun. *Id.* at 451. This court reasoned that the jury could believe that the defendant was present and possessed a gun, but did not pull the trigger of his gun, creating a reasonable doubt as to whether he intended to cause serious bodily injury as required for first degree assault. *Id.*

11

at 461. Because the evidence raised an inference that the defendant had committed *only* second degree assault rather than the charged offense of first degree assault, the court held the trial court erred in denying a lesser degree instruction. *Id.* at 462.

*Fernandez-Medina* relied on *Bowerman* and *Peterson* to articulate *Workman*'s requirement that only the lesser offense had been committed to the exclusion of the greater. *Id.* at 455. Neither *Bowerman* nor *Peterson* used the language "to the exclusion of the charged offense."

In *Peterson*, the defendant was charged with first degree assault and attempted second degree murder. 133 Wn.2d at 886. After a bench trial, the court entered a finding of guilty to second degree assault. *Id.* at 888. Over the defendant's objection, the trial court permitted the State to amend the charge to second degree assault. *Id.* On appeal, the defendant argued that second degree assault is not a lesser included offense of first degree assault. *Id.* In a split decision, the Court of Appeals agreed that the form of second degree assault in that case, torture, was not a lesser included offense of first degree assault and that the posttrial amendment was not permitted under *State v. Pelkey*, 109 Wn.2d 484, 491, 745 P.2d 854 (1987) (a midtrial amendment of an information is reversible error even without a showing of prejudice).

The *Peterson* court reversed, reasoning that an amendment to an inferior degree charge is an exception to the *Pelkey* rule because where the lesser degree crime and the charged crime are not separate and distinct from one another, the defendant has sufficient notice to satisfy article I, section 22. 133 Wn.2d at 892-93. We explained that a crime is

an inferior degree of another when "(1) the statutes for both the charged offense and the proposed inferior degree offense 'proscribe but one offense'; (2) the information charges an offense that is divided into degrees, and the proposed offense is an inferior degree of the charged offense; and (3) there is evidence that the defendant committed only the inferior offense." *Id*. at 891 (quoting *State v. Foster*, 91 Wn.2d 466, 472, 589 P.2d 789 (1979)). We concluded that first degree and second degree assault proscribe only one offense.

Similarly, *Bowerman* did not use the exclusion language. Instead, *Bowerman* considered whether "the facts support[ed] an inference that only second degree murder was committed." 115 Wn.2d at 805. *Bowerman* aligns with *Workman*.

Recently, this court cited *Fernandez-Medina* when describing the *Workman* test. In *State v. Henderson*, we described *Fernandez-Medina* as follows: "[a] jury must be allowed to consider a lesser included offense if the evidence, when viewed in the light most favorable to the defendant, raises an inference that the defendant committed the lesser crime instead of the greater crime. If a jury could rationally find a defendant guilty of the lesser offense and not the greater offense, the jury must be instructed on the lesser offense." 182 Wn.2d 734, 736, 344 P.3d 1207 (2015) (citation omitted). In applying that test, we affirmed the Court of Appeals, which held the trial court erred in refusing a lesser included offense instruction. *Id*. at 737.

The dissenting opinion in *Henderson* quoted the exclusion language from *Fernandez-Medina* and criticized the majority as follows:

13

No. 98256-2

> I infer some discomfort with that standard in the majority's opinion. I share that discomfort; indeed, it arguably stands in tension with the statutory directive that "[w]hen a crime has been proven against a person, and there exists a reasonable doubt as to which of two or more degrees he or she is guilty, he or she *shall* be convicted only of the lowest degree." RCW 9A.04.100(2) (emphasis added). But the parties in this case have not argued that issue.

*Id.* at 749 n.6 (Gordon McCloud, J., dissenting).

Given this confusion, we take the opportunity to clarify the law.

<u>Lesser Included and Lesser Degree Offenses</u>

As *Peterson* illustrates, confusion also exists between lesser included and lesser degree offenses. Thus, it is useful to briefly explore the differences between the two, as well as the progression of our case law interpreting lesser degree and lesser included offenses.

Two statutes form the basis for lesser included and lesser degree offenses: RCW 10.61.003 and RCW 10.61.006. RCW 9A.04.100(2) addresses convicting a person of the lesser degree crime. RCW 10.61.003 (inferior degree) provides,

> Upon an indictment or information for an offense consisting of different degrees, the jury may find the defendant not guilty of the degree charged in the indictment or information, and guilty of any degree inferior thereto, or of an attempt to commit the offense.

RCW 10.61.006 (lesser included) provides, "In all other cases the defendant may be found guilty of an offense the commission of which is necessarily included within that with which he or she is charged in the indictment or information."

"Unlike a lesser *included* offense, a lesser *degree* offense may have an element that is not an element of the greater offense. For example, second degree assault (by

14

No. 98256-2

torture) is an inferior *degree* offense for first degree assault (by inflicting great bodily injury), even though the lesser degree offense has an element that is not a part of the greater degree offense and thus does not qualify as a lesser *included* offense." 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 4.11 cmt. at 99 (4th ed. 2016) (WPIC) (citing *Peterson*, 133 Wn.2d at 891-92).

Additionally, RCW 9A.04.100(2) provides that "[w]hen a crime has been proven against a person, and there exists a reasonable doubt as to which of two or more degrees he or she is guilty, he or she shall be convicted only of the lowest degree."

The rationale for considering lesser offenses dates to 16th century English common law. *Condon*, 182 Wn.2d at 328 (González, J., dissenting). The common law rule existed to aid the "'prosecution when the evidence introduced at trial failed to establish an element of the crime charged.'" *Id.* (quoting *State v. Berlin*, 133 Wn.2d 541, 544, 947 P.2d 700 (1997)); *see also Keeble v. United States*, 412 U.S 205, 208, 93 S. Ct. 1993, 36 L. Ed. 2d 844 (1973). The doctrine of lesser included offenses evolved to protect procedural fairness and substantial justice for the accused. *Condon*, 182 Wn.2d at 328.

Both RCW 10.61.003 (inferior degree offenses) and RCW 10.61.006 (lesser included offenses) were set forth in former RCW 10.61.010 (1909):

> Upon the trial of an indictment or information, the defendant may be convicted of the crime charged therein, or of a lesser degree of the same crime, or of an attempt to commit the crime so charged, or of an attempt to commit a lesser degree of the same crime. Whenever the jury shall find a verdict of guilty against a person so charged, they shall in their verdict specify the degree or attempt of which the accused is guilty.

15

No. 98256-2

Though RCW 10.61.003 and RCW 10.61.006 reflect different circumstances, they have similar applications. Comments to WPIC 4.11 (lesser included crime or lesser degree) clarify that the distinction between lesser included crimes and inferior degree crimes only matters to a judge when deciding whether to instruct the jury about a lesser crime. "The instruction applies regardless of whether the crime is a lesser degree crime or a lesser included crime. In either instance, the framework for juror decision-making is the same." 11 WPIC 4.11 cmt. at 98 (citing *State v. Tamalini*, 134 Wn.2d 725, 730-35, 953 P.2d 450 (1998)).

Tracing back the precedent, *Workman* relied on a line of cases involving lesser included offenses: *Snider*, which relied on *Gallagher*, which in turn relied on *Foley*, which then relied on *Gottstein*. *See, e.g.*, *State v. Snider*, 70 Wn.2d 326, 422 P.2d 816 (1967) (the defendant was not entitled to the lesser included offense because the *Snider* court held there must be some basis in the evidence produced at trial *positively inferring that* the lesser crime was committed and upon which the jury could make a finding as to the lesser included offense); *State v. Gallagher*, 4 Wn.2d 437, 447, 103 P.2d 1100 (1940) ("a defendant may not be convicted of a *lesser degree* of crime which is included in a greater degree unless evidence is adduced to sustain a conviction upon the lesser degree" (emphasis added)); *State v. Foley*, 174 Wash. 575, 580, 25 P.2d 565 (1933) ("the lesser degree of crime must be submitted to the jury along with the greater degree, unless the evidence *positively excludes* any inference that the lesser crime was committed" (emphasis added)); *State v. Gottstein*, 111 Wash. 600, 602, 191 P. 766 (1920) ("it must

16

No. 98256-2

affirmatively appear from the evidence that the crime of manslaughter is excluded before the court will be justified in refusing to submit that crime to the jury. It has been frequently held that, where the evidence excludes the lesser offense, such lesser offense should not be submitted to the jury").

*Gallagher*, *Foley*, and *Gottstein* all concerned inferior degree offenses. The progression from *Gottstein* to *Snider* illuminates the tension between *Workman* and *Fernandez-Medina*. The *Gottstein* line paints an inconsistent standard for lesser included offenses. For cases like *Snider*, which considered lesser included offenses, the standard was inference—a positive inference from the evidence presented that the lesser crime was committed. For cases such as *Gallagher*, *Foley*, and *Gottstein*, which considered inferior degree offenses, the standard required evidence *excluding* the greater crime. The tension in *Workman*'s past was resolved by *Fowler*, which, as noted, affirmed that *Workman* requires a positive inference from the evidence presented that the lesser crime was committed. *Workman*'s past, thus, evidences the present tensions in this case.

B. Interpreting *Workman*

The State correctly notes that there is now one standard. The reason lesser included instructions are given is to assist the jury in weighing the evidence, determining witness credibility, and deciding disputed questions of fact. *State v. McDaniels*, 30 Wn.2d 76, 88, 190 P.2d 705 (1948), *overruled in part on other grounds by State v. Partridge*, 47 Wn.2d 640, 289 P.2d 702 (1955). The jury, not the trial judge, is "'the sole and exclusive judges of the evidence.'" *Id*. Although there may be conflicting evidence,

No. 98256-2

this evidence presents a question of fact for the jury. The conflicts in the evidence merely present a question of fact for the jury. *State v. Kirkby*, 20 Wn.2d 455, 456, 147 P.2d 947 (1944).

Implicit within *Workman*'s reasoning is the idea that when there is affirmative evidence from which the *jury* could conclude that only the lesser included offense occurred, a lesser offense instruction should be given. The word "only" is meant to suggest that a jury might have a reasonable doubt about whether the charged crime was committed but may find that, instead, the lesser crime was committed. Thus, the trial court should consider whether any affirmative evidence exists upon which a jury could conclude that the lesser included offense was committed. The test was never intended to require evidence that the greater, charged crime was *not* committed—only that a jury, faced with conflicting evidence, could conclude the prosecution had proved only the lesser or inferior crime.

*Fernandez-Medina* has caused confusion and, in this case, resulted in the court itself weighing the evidence and denying a lesser included instruction when the evidence presented should have been weighed by the jury. We emphasize that that is not the trial court's role under *Workman*.

In sum, we reaffirm that the factual requirement for giving a lesser or inferior degree instruction is that some evidence must be presented—from whatever source, including cross-examination—which affirmatively establishes the defendant's theory before an instruction will be given.

18

## C.  Applying *Workman* in This Case

Defendants are entitled to the benefit of all the evidence presented at trial, regardless of whether they were the introducing party.  *See* 11 WPIC 1.02.  When the appellate court determines if the evidence at trial is sufficient to support an instruction, it views the "supporting evidence in the light most favorable to the party that requested the instruction."  *Fernandez-Medina*, 141 Wn.2d at 455-56.  If the evidence permits a jury to rationally find a defendant guilty of the lesser offense, a lesser included offense instruction should be given.  *Beck v. Alabama*, 447 U.S. 625, 635, 100 S. Ct. 2382, 65 L. Ed. 2d 392 (1980).  Generally, a defendant may argue inconsistent defenses if the defenses are supported by evidence.  *State v. Frost*, 160 Wn.2d 765, 772, 161 P.3d 361 (2007).  Although the evidence must affirmatively establish the defendant's theory of the case, it is not enough that the jury might disbelieve the evidence pointing to guilty. *Fowler*, 114 Wn.2d at 67.  The court typically "err[s] on the side of instructing juries on lesser included offenses."  *Henderson*, 182 Wn.2d at 736.

The relevant statutes in this case are 9A.36.021 (assault in the second degree) and RCW 9A.36.041 (assault in the fourth degree).  "A person is guilty of assault in the second degree if he . . . [a]ssaults another by strangulation."  RCW 9A.36.021(1)(g).  "Strangulation," as defined under RCW 9A.04.110(26), "means to compress a person's neck, [which would obstruct a] person's blood flow or ability to breathe, or doing so with the intent to obstruct the person's blood flow or ability to breathe."  "A person is guilty of assault in the fourth degree if [he intentionally] assaults another."  RCW 9A.36.041.

19

No. 98256-2

Although Coryell requested a lesser included offense instruction, fourth degree assault is better described as an inferior degree of second degree assault. However, as in *Fernandez-Medina*, "[t]he failure to note the distinction between lesser included and inferior degree offense instructions is not . . . significant in this case . . . because the test for determining if a party is entitled to an instruction on an inferior degree offense differs from the test for entitlement to an instruction on a lesser included offense only with respect to the legal component of the test." 141 Wn.2d at 454-55.

The State argues the trial court and the Court of Appeals correctly applied the factual prong of the *Workman* test because even when the evidence is considered in the light most favorable to Coryell, nothing from the record shows Coryell committed the lesser crime instead of the greater crime. Br. of Resp't at 8-10 (Wash. Ct. App. No. 52369-8-II (2019)); Answer to Pet. for Review at 17. As noted above, rather than looking at all of the evidence presented, the trial court concluded that a fourth degree lesser degree instruction was not warranted since Coryell denied strangling the victim.

> Again, the testimony in this case is either that Ms. Hart'Lnenicka was strangled or she wasn't strangled. There's no testimony from Mr. Coryell that he put his hands around her neck but did not strangle her as that term is defined by law. So a lesser included of assault 4 would be improper.

2 VRP (June 26, 2018) at 214.

As amicus WACDL points out, it appears that the trial court's reasoning applies only to Coryell's first theory. Br. of WACDL as Amicus Curiae at 4. Just as with the defendant in *Fernandez-Medina*, Coryell raised two defenses: (1) that any force he used was either in self-defense or defense of his property or (2) that the force he used did not

20

No. 98256-2

prevent Hart'Lnenicka from breathing. Similarly, the defendant in *Fernandez-Medina* argued that he was not with the victim at the time of the assault, but if the jury found that he was with the victim at the time of the assault, then there was an inference that he was guilty only of the inferior degree assault. Although Coryell stated that he was not with Hart'Lnenicka in the laundry room, if the jury found that there was an assault in the laundry room, then he was entitled to the inference that he was guilty only of fourth degree assault based on the police officer's testimony that he saw no petechial hemorrhaging.

Moreover, under Coryell's version of events, there was one continuous event, not two separate events. Hart'Lnenicka testified to two separate times when she says Coryell put his hands on her neck. The first time was in the living room, which she says did not impact her ability to breathe. The second time occurred in the laundry room when the victim says she could not breathe. If the jury believed that there were two assault incidents, but had a reasonable doubt about whether Coryell put his hands around Hart'Lnenicka's neck two separate times, they might believe that the marks on Hart'Lnenicka's neck came from the first incident, which did not impact her breathing. Yet, with no choice as to the degree of assault, the jury would be left with the decision to let Coryell go free or convict him of the charged crime.

Under the *Workman* test, the question is not whether the evidence *excludes* the greater charged crime. Instead, the question is whether the evidence raises an inference that the lesser degree or lesser included offense was committed such that a jury might

21

No. 98256-2

have a reasonable doubt as to which degree of assault was committed, believe that some

level of assault was committed, and find the defendant guilty of the lesser offense.

Coryell contends the evidence was sufficient to raise an inference that he committed the

lesser degree offense because Officer Malone testified he did not see any signs of

petechial hemorrhaging, which would have likely existed if Hart'Lnenicka had been

strangled. Coryell further contends that his case is legally indistinguishable from the

defendant in *Fernandez-Medina* and that he was entitled to the benefit of all the evidence

presented at trial.

Amicus WACDL buttresses Coryell's argument, reasoning that neither law nor

instructions to the jury differentiate between evidence from the defendant and evidence

from the State and that *Fernandez-Medina* is directly on point in this case.[4]

As this court noted in *Henderson*,

> In criminal trials, juries are given the option of convicting defendants of
> lesser included offenses when warranted by the evidence. Giving juries this
> option is crucial to the integrity of our criminal justice system because
> when defendants are charged with only one crime, juries must either
> convict them of that crime or let them go free. In some cases, that will
> create a risk that the jury will convict the defendant despite having
> reasonable doubts.

182 Wn.2d at 736.

---

[4] Amicus WACDL also asserts that because the trial court erred in denying the lesser included
instruction, Coryell was denied his Sixth Amendment right to present a complete defense. U.S.
CONST. amend. VI. The State argues that we should consider this case on the issues for which
review was granted and that we should consider the amicus only to the extent that it is related to
those issues. Here, we agree with the State.

No. 98256-2

We hold that the trial court erred when it denied a lesser degree instruction on fourth degree assault. The evidence supported an inference that Coryell assaulted, but did not strangle, his girlfriend, and thus, he was entitled to a lesser degree instruction. This is consistent with the test in *Workman* and with the legislature's directive in RCW 9A.04.100(2), which provides, "When a crime has been proven against a person, and there exists a reasonable doubt as to which of two or more degrees he or she is guilty, he or she shall be convicted only of the lowest degree."

## CONCLUSION

We reaffirm that *Workman* provides the proper factual test for determining when a court should instruct a jury on a lesser or inferior degree crime. We conclude that the trial court erred in requiring evidence that would *exclude* the commission of the charged crime. In this case there was evidence, through the police officer, that cast doubt on whether Coryell strangled the victim as defined in the assault statutes, entitling him to a lesser degree assault instruction. Accordingly, we vacate Coryell's conviction and remand the case for further proceedings.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

_____
Madsen, J.

WE CONCUR:

_____     _____
González, C.J.                     Gordon McCloud, J.

_____     _____
Johnson, J.                          Yu, J.

_____     _____
Owens, J.                        Montoya-Lewis, J.

_____     _____
Stephens, J.                       Whitener, J.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.