IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 37738-5-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FE HAILEE HADLEY, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

STAAB, J. — High school student Fe Hadley was charged as an adult with conspiracy to commit first degree murder. The State alleged that Hadley conspired with her friends, including JC, to attack and kill another student during lunch. That plan was disrupted when JC was seen wielding a knife and wearing an awkward face mask near their high school. The principal called the police, who questioned Hadley. She initially admitted a plan to kill the alleged victim, RV, by luring him away from school to a nearby store where JC would attack him. At trial, she testified inconsistent with her initial statements and indicated that she believed the plan was to "beat up" the alleged victim but not kill him. She also denied participating in the plan even though she admitted walking to the store with the alleged victim on the day of the planned attack. A jury convicted Hadley as charged.

On appeal, Hadley alleged numerous errors during her trial. We agree that the trial court erred in failing to instruct the jury on the lesser-included offense of conspiracy to commit fourth degree assault. Because our decision requires a new trial, we decline to address the other trial errors raised by Hadley.

BACKGROUND

In 2017, Hadley and JC were sophomores at Kiona-Benton High School. At some point, Hadley told JC that a senior at their school, RV, was touching her and other girls inappropriately. Hadley complained to school administrators but was not aware of any action being taken against RV. When her complaints went unanswered, she and JC formulated a plan to retaliate against RV. In her initial statements to the police and the school principal, Hadley stated that she and JC planned to "take out" or "kill" RV. Report of Proceedings (RP) at 616. She told police that the plan was for her to convince RV to meet her behind a market across the street from the high school, where JC would then attack RV in an area out of view of the security cameras.

The State presented evidence that RV was convinced to meet Hadley behind the market through a series of social media messages tied to Hadley's account. Prior to the scheduled attack, JC arrived at the agreed location carrying a knife and wearing a red t-shirt on his face with several holes cut for the eyes and mouth. Several students observed him sneaking around the parking lot and began yelling at him.

2

Meanwhile, RV and Hadley arrived at the market and went inside to purchase items for lunch. At trial, Hadley denied any intent to lure RV into an attack, and testified that she only intended to get something to eat and go back to school. Regardless, as Hadley and RV were leaving the store, several freshmen were "going back and forth on the scooters talkin' about a guy in the field with a red mask." RP at 515. RV and Hadley walked around to the back of the store, where RV saw a person in a red mask stand up near a bush in a nearby field and point at RV. RV decided it would not be wise to follow the masked person and returned to school without incident. JC spoke with Hadley and the two of them returned to the school as well.

The school principal was told of the person in the mask at the market and investigated. In a surveillance video from the market, the principal saw JC holding a knife and called the police. Hadley wrote two statements for the school principal and was interviewed by the police. *See* Ex. 5; Ex. 6. She told police that the plan had been to "kill" RV.

The State charged Hadley with conspiracy to commit first degree murder. Hadley was tried as an adult in Superior Court. At trial, Hadley testified that when JC said he wanted to "kill" RV, she believed JC meant to fight or beat-up RV, but she did not intend for RV to be seriously hurt. She specifically testified that she thought this was the plan. She admitted sending RV some messages through social media, inviting him to meet her

at the market, but denied sending the majority of the messages, claiming that her account had been hacked.

The trial court rejected defense counsel's request to instruct the jury on lesser-included crimes of conspiracy to commit assault in the first, second, third, and fourth degree. The jury returned a verdict of guilty to the crime of conspiracy to commit murder in the first degree.

## ANALYSIS

On appeal, Hadley argues that the trial court erred by refusing to instruct the jury on the lesser crimes of conspiracy to commit first, second, and fourth degree assault. The State counters that the evidence did not support instructions for conspiracy to commit assault in any degree.

Criminal defendants have an unqualified right to have a jury instructed on applicable lesser-included offenses. *State v. Parker*, 102 Wn.2d 161, 164, 683 P.2d 189 (1984). Under the Washington rule, a defendant is entitled to an instruction on a lesser included offense if two conditions are met. *State v. Workman*, 90 Wn.2d 443, 447, 584 P.2d 382 (1978). First, under the legal prong of *Workman*, each of the elements of the lesser offense must be a necessary element of the offense charged. *Id*. at 447-48 (citing *State v. Bowen*, 12 Wn. App. 604, 531 P.2d 837 (1975)). Second, under the factual prong of *Workman*, the evidence in the case must support an inference that the lesser crime was committed. *Id*. at 448 (citing *State v. Snider*, 70 Wn.2d 326, 422 P.2d 816 (1967)).

The standard of review for denying jury instructions on lesser included/inferior

offenses depends on the trial court decision under review. *State v. Condon*, 182 Wn.2d

307, 315, 343 P.3d 357 (2015) (citing *State v. Walker*, 136 Wn.2d 767, 771-72, 966 P.2d

883 (1998). If the trial court's decision was based on a factual determination, it is

reviewed for an abuse of discretion. *Id*. at 315-16. If the decision was based on a legal

conclusion, it is reviewed de novo. *Id*. at 316. At trial and on appeal, the State concedes

that the legal prong of *Workman* is met, but argues that the lesser instructions are not

justified under the factual prong. Thus, we review the trial court's decision for abuse of

discretion.

"[T]he factual requirement for giving a lesser or inferior degree instruction is that

some evidence must be presented—from whatever source, including cross-examination—

which affirmatively establishes the defendant's theory before an instruction will be

given." *State v. Coryell*, 197 Wn.2d 397, 415, 483 P.3d 98 (2021). A defendant is not

entitled to a lesser included instruction merely because a jury could ignore some of the

evidence. *Id*. at 406-07. Instead, "[t]he factual prong of *Workman* is satisfied only if

based on some evidence admitted, the jury could reject the greater charge and return a

guilty verdict on the lesser." *Id*. at 407. In other words, "[a] jury must be allowed to

consider a lesser included offense if the evidence, when viewed in the light most

favorable to the defendant, raises an inference that the defendant committed the lesser

crime instead of the greater crime. If a jury could rationally find a defendant guilty of the

lesser offense and not the greater offense, the jury must be instructed on the lesser

offense." *State v. Henderson*, 182 Wn.2d 734, 736, 344 P.3d 1207 (2015) (emphasis

added) (citing *State v. Fernandez-Medina*, 141 Wn.2d 448, 455-56, 6 P.3d 1150 (2000)).

The evidence supporting an instruction on a lesser-included crime must be

affirmative. "'It is not enough that the jury might simply disbelieve the State's

evidence.'" *Coryell*, 197 Wn.2d at 407 (quoting *State v. Fowler*, 114 Wn.2d 59, 67, 785

P.2d 808 (1990)). The type of evidence that satisfies affirmative evidence of the lesser

crime does not have to come from the defendant. Instead, it can be supplied on direct

examination or it might include "evidence elicited on cross-examination, such as

impeachment evidence, evidence of bias, or inability to recall." *Id*. at 408; *see State v.*

*Smith*, 115 Wn.2d 434, 442, 798 P.2d 1146 (1990) (court did not err in failing to instruct

on lesser degrees of theft because the only evidence was that the value of the item taken

was more than $1500); *State v. Speece*, 115 Wn.2d 360, 363, 798 P.2d 294 (1990) (court

did not err in failing to instruct on lesser crime of second degree burglary because

defendant's sole defense was that he did not commit the burglary and there was no

evidence that the burglary was committed without a gun).

To support a jury instruction for conspiracy to commit first degree assault, there

must be affirmative evidence leading to an inference that the defendant conspired with

another to intentionally assault another with the intent to inflict great bodily harm. RCW

9A.36.011(1)(d). "'Great bodily harm' means bodily injury which creates a probability

6

of death, or which causes significant serious permanent disfigurement, or which causes a significant permanent loss or impairment of the function of any bodily part or organ." RCW 9A.04.110(4)(c). Second degree assault requires proof of an intentional assault that recklessly inflict substantial bodily harm. RCW 9A.36.021(1)(a). "'Substantial bodily harm' means bodily injury which involves a temporary but substantial disfigurement, or which causes a temporary but substantial loss or impairment of the function of any bodily part or organ, or which causes a fracture of any bodily part." RCW 9A.04.110(4)(b).

Since the State concedes that these two crimes constitute lesser included crimes of murder in the first degree, we focus on the factual prong of *Workman*. Thus, the issue is whether there was evidence sufficient to support a conspiracy to commit first or second degree assault.

At trial, Hadley testified that she was aware of JC's plan to kill the alleged victim but believed that the term was a euphemism for beating up the victim. She testified at trial that she believed the plan was to beat up the victim without causing substantial harm. Indeed she was clear that she did not intend the victim to suffer any significant harm. While hatching the plan, Hadley agreed with JC to bring the victim to the market on the day planned for the attack. Hadley testified that she did not know that JC was bringing a knife to the fight. JC testified differently, and indicated that Hadley did know he was bringing a knife to the fight and the plan was to kill the victim, not assault the victim.

7

In this case, even when viewed in a light most favorable to Hadley, the evidence does not support an inference of a conspiracy to commit first or second degree assault. The only way to support this theory is for the jury to water down or disbelieve the State's evidence that the plan was to kill the victim. This is not affirmative evidence of assault in the first or second degree.

Hadley argues that her acknowledgement of a plan to assault the victim along with evidence that JC was carrying a knife to the fight is sufficient for a jury to find that the two planned a felonious assault on the alleged victim. Hadley's argument requires us to blend theories and disregard evidence. There was evidence of a plan to murder and evidence of a plan to assault that left bruises. There was no evidence of a plan to assault with the intent to inflict or recklessly cause significant injuries.

Hadley also appeals the trial court's denial of her request for an instruction on the lesser-included crime of conspiracy to commit assault in the fourth degree. As noted above, Hadley testified that she believed the plan was to beat up the victim, causing bruises. The State argues that the evidence does not support a lesser-included instruction on conspiracy to commit fourth degree assault because the only evidence of a conspiracy to commit fourth degree assault came from Hadley, who testified at trial that she did not participate in the conspiracy on the day of the planned attack. The trial court acknowledged that there was evidence of a plan to commit fourth degree assault. Nevertheless, the court agreed with the State that Hadley's testimony did not provide

sufficient evidence because it was not corroborated and Hadley denied participating in any conspiracy on the day of the planned attack.

Unlike the proposed instructions for conspiracy to commit first and second degree assault, there was sufficient evidence to instruct the jury on the lesser included offense of conspiracy to commit fourth degree assault. The State's argument conflates sufficiency of the evidence with credibility of the evidence. The State argues that Hadley's trial testimony contradicts her earlier statements to law enforcement. The trial court noted that her claim was not corroborated by any other direct or circumstantial evidence. When considering whether the evidence supports an instruction on a lesser included crime, the evidence must be viewed in a light most favorable to the defendant. *Henderson*, 182 Wn.2d at 736. Disputed evidence is decided by the jury, not a judge. *Coryell*, 197 Wn.2d at 414. "The reason lesser included instructions are given is to assist the jury in weighing the evidence, determining witness credibility, and deciding disputed questions of fact." *Id.*

We note that our outcome may be different if there was only evidence that Hadley subjectively believed that "kill" meant bruise. If kill meant kill to everyone but Hadley, then she was not guilty of being part of a conspiracy to murder. Hadley's subjective belief alone is not evidence of a conspiracy to commit fourth degree assault because conspiracies require an agreement between two or more persons. *See State v. Pacheco*, 125 Wn.2d 150, 155, 882 P.2d 183 (1994) ("the common law definition of the agreement

9

required for a conspiracy is defined not in unilateral terms but rather as a confederation or combination of minds."). But in this case, Hadley testified that she thought the "plan" was to beat up the victim.[1]

The State also argues that the evidence does not support an instruction on conspiracy to commit fourth degree assault because Hadley denied participating in the conspiracy. At trial, Hadley testified that on the day of the planned attack, she walked to the market with the victim, but only intended to get something to eat and return to the school. She testified that after the victim purchased food, and as the two were leaving the market, several students were pointing at a person near the market wearing a red mask and suggesting that the masked person had nefarious intentions. After the alleged victim watched the masked person from a distance, Hadley testified that she convinced him to return to school. The State argues that the evidence does not support instructions on conspiracy to commit fourth degree assault because Hadley denied participating in any conspiracy.

The State's argument fails because a defendant can assert alternative and inconsistent defenses. *Fernandez-Medina*, 141 Wn.2d at 459-60. So long as the evidence supports the inconsistent theories and the lesser included offense, the trial court

---

[1] "[Defense counsel:] So, you thought this was a plan that [JC] was gonna go beat up or at least get in a fight with [RV]?" RP at 710.

"[Hadley:] Yes." RP at 710.

should instruct on the lesser included offense. In *Fernandez-Medina*, the defendant was charged with first degree assault. At trial, the defendant claimed he was not present during the crime but was elsewhere. Nevertheless, the defense also disputed that a clicking noise from the gun must be from pulling the trigger. The trial court rejected the defendant's requested inferior degree instruction of second degree assault. The Supreme Court reversed, recognizing the defendant's right to raise inconsistent defense theories. *Fernandez-Medina*, 141 Wn.2d at 459. In other words, while the defendant maintained that he was not present during the crime, he also produced evidence that the suspect did not pull the trigger of the gun. Thus, the trial court erred in failing to instruct on the inferior degree crime. *Id*. at 461-62.

Here, Hadley acknowledged being part of a plan to attack the victim. She testified at trial that the plan was to beat up the victim, but not seriously injure him. She also testified that she did not participate in the conspiracy on the day of the planned attack, even though she admitted her participation to law enforcement shortly after the event, and testified that she went to the market with the victim on that day. Essentially, Hadley was arguing that she did not participate in the conspiracy, but if she did, it was only a conspiracy to commit fourth degree assault. Because the evidence raises an inference that Hadley participated in a conspiracy to commit only fourth degree assault, the trial court erred in refusing to instruct the jury on this lesser-included offense.

11

No. 37738-5-III
*State v. Hadley*

Our resolution of this issue requires that the conviction for conspiracy to commit first degree murder be reversed and the case remanded for a new trial. Because the remaining issues raised by Hadley allege additional trial errors, it is unnecessary for us to address them as they provide no additional relief.

Reverse and remand.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, J.

WE CONCUR:

_____
Pennell, J.

_____
Siddoway, C.J.

12